Argued and submitted July 19, reversed and remanded for reconsideration
September 27, reconsideration denied November 17, petition for review denied
December 28, 1989 (308 Or 660)

# OREGON STATE CORRECTIONAL INSTITUTION,
Corrections Division,
*Petitioner,*

*v.*

# BUREAU OF LABOR AND INDUSTRIES et al,
*Respondents.*

(19-84; CA A49649)

780 P2d 743

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for petitioner. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Paul J. De Muniz, Salem, argued the cause for respondents. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

## GRABER, P. J.

Oregon State Correctional Institution (OSCI) seeks review of a final order of the Commissioner of the Bureau of Labor and Industries in which the Commissioner found that OSCI had committed an unlawful employment practice in violation of ORS 659.425 when it refused to hire Green as a correctional officer. The issues are whether the Commissioner correctly interpreted ORS 659.425(1)(c) and whether she properly required OSCI to prove its affirmative defense by clear and convincing evidence. We reverse and remand for reconsideration on both points.

Green applied to OSCI in 1983 for a position as a correctional officer.[1] On August 2, he was told to prepare to go to work, subject to passing OSCI's physical examination. At the time, he weighed 213 pounds. He is 5'6" tall. In the opinion of the examining physician, Green performed well on the first tests, except that his resting pulse rate was 84, which the physician considered high. He then had Green perform 15 sit-ups and took his pulse immediately afterward and two minutes later. Both times the pulse was 94. The physician then consulted a weight chart, which he had clipped out of a newspaper and which he believed conformed to an insurance company's actuarial tables, and concluded that Green was 50 pounds overweight. The physician diagnosed Green as "obese." The obesity, combined with the high resting pulse and its failure to return to the resting rate two minutes after exercise, led the physician to conclude that Green was not capable of performing "instant and/or sustained arduous physical activity." The ability to perform such activity is a requirement of the correctional officer position.

OSCI refused to hire Green because of the physician's report. He filed an administrative complaint in which he alleged that the rejection constituted an unlawful employment practice based on a perceived handicap. After investigation and the filing of specific charges,[2] the agency held a hearing in

---

[1] We state the facts as the Commissioner found them. The parties do not disagree with her findings, except for those that relate to OSCI's affirmative defense.

[2] The specific charges also alleged that Green "has an impairment which, with reasonable accommodation, does not prevent his performing the duties of a Correctional Officer." The Commissioner found that "Complainant apparently abandoned, or could not support, this first theory at hearing." The theory of discrimination based on an actual handicap is not involved in this appeal.

1986; the Commissioner issued her final order in 1988.

The Commissioner found that Green was physically capable of doing the job for which OSCI rejected him. She concluded that Green did not have a physical or mental impairment but that OSCI treated him as though he did and that that action violated ORS 659.425(1)(c). OSCI asserted, as an affirmative defense, that it would have hired Green on a probationary basis and that its usual investigation would have disclosed sufficient negative information about him that he would have been released no later than the end of the probationary period for unrelated nondiscriminatory reasons. The Commissioner ruled that OSCI had to prove that defense by clear and convincing evidence and found that it had not done so. She therefore ordered OSCI to pay Green back pay and damages for humiliation[3] and to cease and desist from discriminating against any similarly situated individual whom it regarded as having a physical or mental impairment.

The first issue is whether the Commissioner correctly held that an employer violates ORS 659.425(1)(c) when it refuses to hire a person whom it regards as having *any* physical or mental impairment, rather than a physical or mental impairment that substantially limits a major life activity.[4] That holding was erroneous.[5] ORS 183.482(8)(a). Because of it, the Commissioner made no findings concerning how substantial the perceived impairment was; that failure, too, was erroneous.

ORS 659.425(1) directly applies to this case:

---

[3] Green had found other work and did not seek to be hired.

[4] OSCI does not assert that there is no substantial evidence to support the finding that it regarded Green as "impaired" under the Commissioner's definition. OSCI does object to the Commissioner's definition of "impairment" on the ground that it does not require that an impairment substantially limit a major life activity. The Commissioner adopted this definition of "impairment:" "Any apparent or medically detectable condition which weakens, diminishes, restricts or otherwise damages an individual's health or physical or mental activity." How substantial an impairment must be before it renders a person handicapped under the statute is not the same issue as what constitutes an impairment. We hold below that the Commissioner incorrectly determined that a perceived impairment need not substantially limit a major life activity. That error does not affect her definition of "impairment," however.

[5] The Commissioner rested her analysis on the absence of the word "such" before "impairment" in ORS 659.400(3)(c)(C). However, that definitional section is meant only to clarify, not to change, the substantive provisions of ORS 659.400(2), which we discuss in the text, *infra*.

"For the purpose of ORS 659.400 to 659.435, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a)   An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b)   An individual has a record of a physical or mental impairment; or

"(c)   An individual is regarded as having a physical or mental impairment."

The definition of the term "handicapped person" in ORS 659.400(2) is relevant to an unlawful employment practice claim based on handicap discrimination. *Quinn v. Southern Pacific Transportation Co.*, 76 Or App 617, 624, 711 P2d 139 (1985), *rev den* 300 Or 546 (1986). ORS 659.400(2) provides:

" 'Handicapped person' means a person who has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment."

We also have treated the definition of "[i]s regarded as having an impairment" in ORS 659.400(3)(c) as relevant to the meaning of the phrase "is regarded as having a physical or mental impairment" in ORS 659.425(1). *Quinn v. Southern Pacific Transportation Co., supra*, 76 Or App at 625. That definition states that a person is regarded as having an impairment if the person:

"(A)   Has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer or supervisor as having such a limitation;

"(B)   Has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or

"(C)   Has no physical or mental impairment but is treated by an employer or supervisor as having an impairment."

ORS 659.425(1)(c) provides only that it is an unlawful employment practice to refuse to hire a person who is regarded as having a physical or mental impairment; it does not explicitly require that the impairment substantially limit

a major life activity. However, ORS 659.425(2), (3), and (4) all prohibit discrimination against a "handicapped person," and we construe ORS 659.425(1) to cover the same protected class. The definition of "handicapped person" in ORS 659.400(2) is relevant when construing all of ORS 659.425, including ORS 659.425(1), because ORS 659.400(2) describes those whom the legislature intended to protect. *See also* ORS 659.405. A person fits the definition if the person has, in fact, or "has a record of" having, an impairment "which *substantially limits* one or more major life activities" or if the person "is regarded as having *such* an impairment." ORS 659.400(2). (Emphasis supplied.) In context, the definition means that, in order to be within the protected class of handicapped persons, the person must be regarded as having an impairment that substantially limits one or more major life activities.[6]

In addition, the definition of "[i]s regarded as having an impairment" in ORS 659.400(3)(c)(C) is relevant to understanding the similar phrases in ORS 659.400(2) and ORS 659.425(1). The legislature adopted those statutes as a unit, Or Laws 1973, ch 660, and amended them as a unit, Or Laws 1979, ch 640, and we must therefore interpret them as a unit, despite the minor variations in wording. *See Quinn v. Southern Pacific Transportation Co., supra,* 76 Or App at 624-626. ORS 659.400(3)(c) itself also must be read as a unit. In all cases, the person must be regarded as having an impairment that substantially limits a major life activity. That is, if the employer were correct in its belief about the person, the person would be "handicapped" within the meaning of the nondiscrimination statutes. Subsection (A) protects the person who has a nonsubstantial impairment that the employer erroneously treats as substantial, as in *Quinn.* Subsection (B) protects a person who has an impairment that, from a medical standpoint, does not actually substantially limit a major life activity but that does so because of the attitude of others. An example might be a congenital facial deformity. Subsection

---

[6] Federal cases have reached a similar result under the regulations that were the model for the Oregon law. *See, e.g., Forrisi v. Bowen,* 794 F2d 931, 934-935 (4th Cir 1986); *E. E. Black, Ltd. v. Marshall,* 497 F Supp 1088, 1099-1102 (D Haw 1980). The legislature derived ORS 659.400(3)(c)(C) directly from 29 CFR § 1613.702(e), the regulations adopted under sections 503 and 504 of the Rehabilitation Act of 1973, 29 USC §§ 793-794. *See* Minutes, Senate Judiciary Committee, June 28, 1979, p 3.

(C) protects the unimpaired person who is the victim of "mistaken identity" and is thought to have a substantial impairment. Under subsection (C), the employer might *either* regard the unimpaired person as having an impairment that, if actually present, would substantially limit a major life activity (for example, erroneously believing that the person is blind) *or* regard the unimpaired person as having a nonsubstantial impairment that, in turn, the employer erroneously believes is substantial (for example, if the plaintiff in *Quinn* had had no impairment at all, but was treated as if he did).

The Bureau asks us to read *Quinn v. Southern Pacific Transportation Co., supra,* as holding that an employer treats a person as having an impairment that limits a major life activity, employment, whenever the employer refuses the person one job because of the impairment or alleged impairment. In *Quinn,* the plaintiff had moderate color blindness that did not interfere with his ability to distinguish the signals that he would have to obey as a locomotive fireman or engineer. The defendant, nevertheless, refused to promote him to a trainee fireman position. We held that it had treated him as having a limitation as a result of his impairment that he did not actually have.

> "Under ORS 659.400(3)(a), employment is a major life activity, and it is clear that, because of his color vision, plaintiff's employment opportunity in engine service with Southern Pacific has been limited. Southern Pacific has treated plaintiff's impairment as limiting a major life activity." 76 Or App at 626.

The Bureau's reading would be inconsistent with ORS 659.400(2). It also is inconsistent with the federal cases under the regulations on which the Oregon statute is based. *See Tudyman v. United Airlines,* 608 F Supp 739 (DC Cal 1984); *see also* n 6, *supra.* The limitation on a major life activity must be substantial.

■ The Commissioner found that "obesity describes an impairment"[7] and that OSCI regarded Green as obese.

---

[7] *Compare* OAR 839-06-240(2), which presently provides, in pertinent part:

"Conditions which are mutable only upon long-term treatment, and which either do not impair the individual's ability to perform the work involved * * * or with reasonable accommodation would not impair the individual's ability to perform the work involved * * * may not form the basis for rejection of the individual for a position. *Examples include but are not limited to obesity, overweight, underweight.*" (Emphasis supplied.)

The Commissioner adopted that interpretive rule after the events in this case but before the hearing. She did not refer to it in the final order.

Whether obesity, when present, is an impairment that substantially limits one or more major life activities is a question for the Commissioner to decide on remand. *See Melvin v. Kim's Restaurant, Inc.,* 308 Or 177, 181, 776 P2d 1286 (1989). If the Commissioner finds that obesity is or can be a nonsubstantial impairment (as she implicitly did), then she also must consider whether OSCI erroneously regarded it as substantially limiting a major life activity. Whether OSCI so evaluated Green's condition is a question of fact and, if she reaches it, is for the Commissioner on remand.

Both parties ask that we apply the proper legal standard ourselves and modify or affirm the order according to our analysis. We decline. Because the Commissioner applied an incorrect legal standard, we remand for her to reconsider under the proper standard. ORS 183.482(8)(a)(B).

■ In its second assignment of error, OSCI asserts that the Commissioner improperly required it to prove its affirmative defense, that it would have discovered information through its normal investigative processes that would have led it to terminate Green's employment no later than the end of his probationary period, by clear and convincing evidence.[8] ORS 183.450(5) provides that an administrative agency may not issue an order except "as supported by, and in accordance with, reliable, probative and substantial evidence." In *Metcalf v. AFSD,* 65 Or App 761, 765, 672 P2d 379 (1983), *rev den* 296 Or 411 (1984), we held that the burden of proof in an administrative hearing "is by a preponderance of the evidence in the absence of some *legislative* adoption of a different standard." (Emphasis supplied.) The Commissioner purported to adopt the clear and convincing standard for evaluating the affirmative defense by rule. She did not have that authority. On remand, she must decide whether OSCI proved its defense by a preponderance of the evidence. ORS 183.482(8)(a)(B).

Reversed and remanded for reconsideration.

---

[8] The affirmative defense goes to the mitigation of damages, for it assumes that OSCI should have hired Green on a probationary basis and would have retained him at least until it learned of the information that it asserts would have disqualified him from permanent employment. Causation is an element that the complainant must prove.