Argued and submitted May 22, 1992, affirmed on appeal; reversed and remanded on cross-appeal March 3, 1993

Anna M. WINNETT,
*Respondent - Cross-Appellant,*

*v.*

CITY OF PORTLAND,
*Appellant - Cross-Respondent.*

(A8807-03916; CA A68473)

847 P2d 902

Harry Auerbach, Deputy City Attorney, Portland, argued the cause and filed the briefs for appellant - cross-respondent.

Todd A. Bradley, Portland, argued the cause for respondent - cross-appellant. With him on the briefs was Linda K. Eyerman, Portland.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

De MUNIZ, J.

---

* Leeson, J., *vice* Buttler, J., retired.

## De MUNIZ, J.

Plaintiff brought this unlawful employment practice claim against the City of Portland. ORS 659.121. She alleged that, when the city discharged her from her position as a firefighter, it discriminated against her on the basis of gender and on the basis of a perceived impairment. ORS 659.030 (1)(a); ORS 659.425(1)(c).

In a single proceeding, the sex discrimination claim was tried to the court, and the perceived impairment claim was tried to a jury. The court and jury each found in favor of plaintiff. The court then granted defendant's motion for a judgment notwithstanding the verdict (*n.o.v.*) on the perceived impairment claim.

The city appeals the judgment for plaintiff on the sex discrimination claim. It contends that the court erred by finding that the city discriminated against plaintiff on the basis of gender. Plaintiff cross-appeals, making two assignments of error. First, she contends that the court erred by awarding her only three weeks in back pay on her sex discrimination claim. Second, she contends that the court erred by granting the city's motion for a judgment *n.o.v.* on the perceived impairment claim. In response, the city makes two cross-assignments of error on that claim. It contends that the court erred by refusing to give its proposed instruction on the perception of a physical impairment. It also contends that the court erred by giving an incomplete definition of "physical impairment." We affirm on the appeal and reverse on the cross-appeal.

In 1986, the Portland Fire Bureau adopted a pre-employment program aimed at increasing the number of women and minority firefighters in the bureau. The program included course work at Portland Community College and physical fitness training. Miller organized the physical fitness part of the program. Twenty-two people began the program with plaintiff in the spring of 1987. Plaintiff was one of only eight people in that group to complete the program. Seven of those eight were women. Although Miller told the women that he thought their chances of passing the physical agility test were "slim to none," six of them, including plaintiff, did. Plaintiff received "A"s in the graded courses and earned her

associate's degree in Fire Science. She then passed the civil service examination, but did not pass the medical exam on her first try. She dieted and increased her training regimen. She passed the exam on her next try, and the bureau hired her as a firefighter.

As a new firefighter, plaintiff was on probationary status for a year. She successfully completed the 12-week program at the firefighter's academy and began on-the-job training in firefighting techniques. She was the only woman, and the only person without prior firefighting experience, in her training group. She was issued men's boots and gloves that were too large for her. Although she had requested the proper sizes, they were never supplied.

The first day of drills included exercises that involved climbing a tower and raising a ladder. When plaintiff climbed the tower, her feet continually slipped inside her boots, which began to fall off with each step that she took. When she performed the ladder drill, her oversized gloves made it difficult to pull the halyard to extend the ladder. However, she soon learned a new technique that enabled her to raise the ladder by herself.

On that first day, one of plaintiff's teammates injured his back during the ladder drill and missed a week of training. The chief training officer, Bender, concluded that the teammate's injury was caused by poor technique. At the end of the day, training officers Babcock and Wallace told plaintiff that they were concerned about her physical ability to perform some of the drills. Plaintiff told them about the difficulty that her improper equipment had caused.

On the fourth day, the trainees climbed the drill tower while wearing a breathing mask, although the SCBA[1] certification class had not yet been conducted. Although plaintiff did not know it, her mask was not the correct size. As she climbed the ladder, her air pack pushed her helmet down, displacing her breathing mask and obstructing her vision. She had difficulty completing the exercise, and the training officers told her not to continue after she had completed two

---

[1] Self-Contained Breathing Apparatus.

circuits on the course. She told them that she thought she had not been getting enough air through her face mask.

Later that day, plaintiff pulled a muscle during one of the training drills. Bender took her to the hospital. She was treated and released without any work restrictions. Although Bender had never observed plaintiff on the training ground, he was concerned about her physical ability to be a firefighter. According to plaintiff,

"He started talking about [another female firefighter], and said that she had done the right thing when she had resigned early on in her training when she realized that she was in way over her head, and he said that I should be brutally honest with myself and realize that sometimes you ask a question in life and the answer just comes back no."

The next week, plaintiff experienced heat exhaustion during a drill. Bender took her to the hospital again. While plaintiff was being examined by a doctor, Bender decided to discharge her.

According to Bender, he decided to discharge plaintiff because her performance in the training exercises demonstrated that she lacked "some very, very basic abilities." The Chief of Personnel prepared a termination letter that informed plaintiff that, "due to a lack of overall body strength, you are unable to perform the physical tasks required of a firefighter." However, Bender testified that he had once seen her carrying a turret that he considered heavy enough that it required two people to move it. He testified that one of the reasons he decided to discharge plaintiff was her inability to climb the drill tower with the breathing equipment on. However, he admitted that he knew her boots and breathing mask did not fit properly and that plaintiff had not attended a SCBA class before she had been required to climb the drill tower with a breathing mask on. Bender said that another factor in his decision was that "her performance was having a limiting effect on the progress of the other trainees [on her team]." However, Babcock testified that the team was behind because of the team member who had injured his back and missed a week of training.

The city assigns error to the court's conclusion that the city had discriminated against plaintiff on the basis of

gender. ORS 659.030 is modeled after Title VII of the federal Civil Rights Act. *Seitz v. Albina Human Resources Center*, 100 Or App 665, 672-73, 788 P2d 1004 (1990). In applying Oregon's employment discrimination laws, we may look to federal cases that interpret Title VII for their instructive value.

■ An action for back pay under ORS 659.121(1) is one for equitable relief. *Seitz v. Albina Human Resources Center, supra*, 100 Or App at 672. Although we review plaintiff's sex discrimination claim *de novo*, we give considerable weight to the court's findings on disputed factual matters and the inferences that it drew from those facts. *Seitz v. Albina Human Resources Center, supra*, 100 Or App at 674; *Cook v. Coos-Curry Electric Cooperative*, 86 Or App 600, 603, 740 P2d 201 (1987). The trial court found:

> "I think what has happened here—and I do think it is because she was a woman that she was terminated in seven days. She really was not, I don't think, given ample opportunity to prove whether or not she could complete the program and qualify as a firefighter. And I think that if she had been a male that the male would have been allowed greater time."

■ Bender's testimony about his reasons for discharging plaintiff conflicted with his own testimony and that of Babcock. Miller's testimony that women were not expected to succeed on the agility tests reveals preconceptions that women were physically incapable of performing the tasks required of firefighters. However, Miller testified that, through diligent training, six of the seven women in plaintiff's pre-employment group were able to pass the test. Bender's testimony that plaintiff held up her training group's progress was negated by Babcock. He testified that the group was delayed by an injury to a male team member, whose injury was caused by poor technique. The male was not discharged. He was allowed to recuperate and proceed.

The city has never contended that plaintiff's gender is a "bona fide occupational requirement reasonably necessary to the normal operation" of the Portland Fire Bureau. ORS 659.030(1)(a). We are persuaded that plaintiff satisfied her burden to prove that gender was a substantial and impermissible factor in the city's decision to discharge her. ORS

659.030(1)(b).[2] *See Holien v. Sears, Roebuck and Co.*, 298 Or 76, 90 n 5, 689 P2d 1292 (1984). The court correctly concluded that the city violated ORS 659.030(1)(a) when it discharged plaintiff.

■       In her first assignment on cross-appeal, plaintiff contends that the court erred by awarding her back pay for only a three-week period. A victim of sex discrimination is entitled to back pay that compensates the employee for wages that would have been earned in the absence of the unlawful discrimination. *See Beal v. Gilchrist Timber Co.*, 64 Or App 300, 303, 667 P2d 575, *rev den* 295 Or 840 (1983).[3]

■       Plaintiff was hired on *probationary* status, which indicates that her job was expected to become permanent if she successfully completed the probationary period. 64 Or App at 303 n 1. The court awarded only three weeks of back pay to plaintiff, because it was "not at all convinced that [plaintiff] would have completed the [on-the-job training] program." The city contends that the court properly limited her recovery, because "the uncontroverted testimony was that the physical requirements of the academy got harder over time," and plaintiff did not prove that she would have completed the program.

Plaintiff established that she intended to complete the program and make a career out of firefighting. The record reflects that she has the tenacity to accomplish that goal, if she were given the same chance that the male firefighters were given. Whether the city would have eventually discharged her for a nondiscriminatory reason is an affirmative defense, and the city has not met its burden of proving it. *Cf. Lane County Public Works Assn. v. Lane County*, 118 Or App

---

[2] The city contends that plaintiff failed to prove that it intended to discriminate against her. To the extent that the city suggests plaintiff was required to prove that its actions were the product of ill will, we disagree. Plaintiff was required to prove that "she was treated less favorably than male candidates because of sex. [That] is sufficient to establish discriminatory motive * * *." *Price Waterhouse v. Hopkins*, 825 F2d 458, 469 (DC Cir 1987), *rev'd on other grounds* 490 US 228, 109 S Ct 1775, 104 L Ed 2d 268 (1989).

[3] The employee is required to mitigate damages by seeking reasonable alternative employment. *See Furrer v. Int'l Health Assurance*, 256 Or 429, 446-47, 474 P2d 759 (1970); *but see Gunsolley v. Bushby*, 19 Or App 884, 897, 529 P2d 950 (1974) (public employee has no duty to mitigate by accepting other employment if that would constitute waiver of a claim for reinstatement).

46, 52, 846 P2d 414 (1993) (burden to prove affirmative defense in administrative proceedings); *see OSCI v. Bureau of Labor and Industries,* 98 Or App 548, 780 P2d 743, *rev den* 308 Or 660 (1989). Plaintiff was entitled to back pay from the date that she was terminated until trial.[4]

In her claim under ORS 659.425(1)(c), plaintiff alleged that the city unlawfully discharged her because it perceived her "height, alleged lack of physical strength and alleged potential for future injury" as physical impairments when they, in fact, were not.[5] The jury found in her favor on that claim. The court granted the city's motion for judgment *n.o.v.* on two grounds. First, the court concluded that a plaintiff in a perceived impairment claim must provide evidence of a physical abnormality and that plaintiff had not done so. Second, the court concluded that " 'major life activity' relates to employment generally and not to the particular job that is at issue." Plaintiff contends, in her cross-appeal, that the court erred by granting the city's motion. In response to plaintiff's cross-appeal, the city makes two cross-assignments of error relating to the jury instructions. Before considering plaintiff's argument on her cross-appeal, we will examine the jury instructions that preceded the jury's verdict.

The city contends that the court erred by refusing to give its proposed instruction on the perception of physical

---

[4] The parties stipulated that that amount, minus the damage that plaintiff mitigated by obtaining alternative employment, was $42,386.

[5] ORS 659.425(1) provides, in part:

"[I]t is an unlawful employment practice for any employer to * * * discharge from employment * * * because:

"* * * * *

"(c) An individual is regarded as having a physical or mental impairment."

ORS 659.400(2)(c) provides, in part:

" 'Is regarded as having an impairment' means that the individual:

"* * * * *

"(C) Has no physical or mental impairment [that substantially limits one or more major life activities] but is treated by an employer or supervisor as having an impairment."

*See OSCI v. Bureau of Labor and Industries, supra,* 98 Or App at 552-54.

ORS 659.400(2)(a) provides:

" 'Major life activity' includes, but is not limited to * * * employment * * *."

impairment. The city's proposed instruction included this definition:

> "Employment is a major life activity.
>
> "For you to find that defendant believed plaintiff's employment activities were substantially limited, you must find that defendant City believed that plaintiff was 'handicapped' in a manner which would substantially limit her ability to find employment *in the work place at large.*" (Emphasis supplied.)

ORS 659.400(2)(c)(C) makes it unlawful for an employer to discharge a person because the employer mistakenly believes that the employee has an impairment that substantially limits any "major life activity." *OSCI v. Bureau of Labor and Industries, supra,* 98 Or App at 553-54. "Employment" is a major life activity. ORS 659.400(2)(a).[6] The city's proposed instruction indicates that plaintiff could recover only if the city believed that her "impairments" substantially limited her ability to engage in employment in a general sense.

In *Quinn v. Southern Pacific Transportation Co.*, 76 Or App 617, 711 P2d 139 (1985), *rev den* 300 Or 546 (1986), the plaintiff had a partial red-green color vision deficiency. The evidence showed that his impairment would not have adversely affected his performance as a firefighter or as an engineer for the railroad. Nonetheless, the employer denied him a job in engine service on the basis of his vision deficiency. We concluded:

> "It is immaterial whether plaintiff's vision deficiency interferes with a major life activity, because on this record it is not established that plaintiff has a handicap that would prevent him from performing the duties of an engineer. The trial court specifically found that 'his color vision may not prevent the performance of the work involved.'
>
> "[E]mployment is a major life activity, and it is clear that, because of his color vision, plaintiff's employment opportunity in engine service with Southern Pacific has been limited. Southern Pacific has treated plaintiff's impairment as limiting a major life activity." 76 Or App at 626.[7]

---

[6] Other major life activities include self-care, ambulation, communication, transportation, education, and ability to acquire, rent or maintain property. ORS 659.400(2)(a).

[7] Mr. Quinn's color vision deficiency was an actual impairment. Thus, his claim

Our opinion in *Quinn* makes it clear that "employment," as used in ORS 659.400(2)(a), does not mean employment in general.

In *E. E. Black, Ltd. v. Marshall*, 497 F Supp 1088 (D Haw 1980), the court was called on to construe the term "handicapped person." 29 USC § 706(6).[8] The court observed:

> "A person, for example, who has obtained a graduate degree in chemistry, and is then turned down for a chemist's job because of an impairment, is not likely to be heartened by the news that he can still be a streetcar conductor, an attorney or a forest ranger." 497 F Supp at 1099.

The court weighed and rejected contentions that the term "employment" meant "employability generally" and "the employment of one's choice with [a particular employer]." 497 F Supp at 1099.

We are similarly persuaded that the meaning of the term "employment" in ORS 659.400(2)(a) is not at either end of the spectrum. In *OSCI v. Bureau of Labor and Industries, supra*, we observed that the legislature enacted the provisions of ORS 659.400 as a unit, and we concluded that we were therefore required to "interpret them as a unit, despite the minor variations in wording." 98 Or App at 553. That is why we construed "regarded as having a physical or mental impairment" as meaning "the person must be regarded as

---

was cognizable under ORS 659.425(1)(a), which prohibits employment discrimination against

> "[a]n individual [who] has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved[.]"

[8] *Former* 29 USC § 706(7) provided, in part:

"[T]he term 'handicapped individual' means any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services * * *.

"(B) [T]he term 'handicapped individual' means * * * any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment."

The current version of that definition is found at 29 USC § 706(8).

having an impairment that substantially limits a major life activity." 98 Or App at 553.

■     We are also persuaded that the provisions of ORS 659.425 must be construed as a unit, despite minor variations in wording. A person who "is regarded as having a physical or mental impairment" that substantially limits employment is a person who is regarded as having an impairment that substantially limits "the performance of the work involved." ORS 659.425(1)(a), (c).

Here, the "work involved" is firefighting. The city's proposed instruction did not accurately state the law, because it was overbroad. The court had no duty to correct or edit the instruction, and it did not err by refusing to give it to the jury. *Beglau v. Albertus*, 272 Or 170, 179, 536 P2d 1251 (1975).

■     Next, the city contends that the court erred by giving the jury this instruction:

"For the purposes of this case, a physical impairment [means] any apparent or medically detectable condition that substantially weakens, diminishes, restricts or otherwise damages an individual's health or activity."

The city contends that that instruction was erroneous, because it did not define "the element of substantial limitation on one or more of plaintiff's major life activities." Although we agree with the city that the jury needed guidance on that element of plaintiff's claim, we are persuaded that the instructions as a whole provided that guidance.

The court gave the jury this instruction:

"Plaintiff claims that the defendant, City of Portland, unlawfully discharged her in violation of the Oregon statutes prohibiting discrimination on account of physical handicap. *These statutes make it unlawful for an employer to discharge an employee*, A, who has a physical impairment [which,] with reasonable accommodation by the employer does not prevent the performance of the work involved; or B, a person *who has no physical impairment which would prevent the performance of the work involved but is treated by the employer as having such impairment*." (Emphasis supplied.)[9]

---

[9] The city does not argue that the instruction about person "A" submitted to the jury a claim for discrimination on the basis of an actual impairment, ORS 659.425(1)(a), and we express no opinion on whether it did.

The "work involved" was firefighting, which was a major life activity for plaintiff. *Quinn v. Southern Pacific Transportation Co., supra; E. E. Black, Ltd. v. Marshall, supra.* The court's instruction informed the jury that plaintiff could prevail if the city regarded her as having an impairment that not only "substantially limited" her performance of the work involved, but actually prevented it. If anything, that instruction was more restrictive than an instruction that merely required plaintiff to prove the city's erroneous perception of a substantial limitation. The instructions were not prejudicial to the city; they were beneficial to it. *Huston v. Trans-Mark Services,* 45 Or App 801, 812, 609 P2d 848, *rev den* 289 Or 587 (1980). The error, if any, could not have prejudiced the city.

■ In reviewing the court's judgment *n.o.v.*, we view the evidence in the light most favorable to plaintiff, and we must reinstate the jury's verdict unless there is no evidence to support it. Or Const, Art VII (amended), § 3; *Whinston v. Kaiser Foundation Hospital,* 309 Or 350, 356 n 8, 788 P2d 428 (1990); *Malensky v. Mobay Chemical Corp.,* 104 Or App 165, 167, 799 P2d 683 (1990), *rev den* 311 Or 187 (1991).

■ There was evidence that stamina and strength are bona fide occupational requirements for a firefighter, because they are "reasonably necessary to the normal operation" of the fire bureau. ORS 659.030(1)(a); *see OSCI v. Bureau of Labor and Industries, supra,* 98 Or App at 550. Twice, plaintiff required medical attention after training drills. However, Dr. Beers testified that her muscle strain and heat exhaustion were not indicia of weakness or predisposition to injury. He also testified that those events were unrelated to overall body strength and stamina.

Bender testified that he did not have any medical training, other than basic first aid. Before making his decision to discharge plaintiff, he did not ask the physician who treated plaintiff or the one who had examined her for the fitness exam whether her strength or stamina might affect her ability to perform as a firefighter. When he told plaintiff that she was being fired, she asked him why she had not received a letter of warning. According to plaintiff,

"[H]e said that if I wanted letters, that he would go downstairs and type up letters for both of the times I had to go to the hospital * * *."

The jury could reasonably have found that plaintiff's stature, stamina and potential for future injury did not constitute physical impairments that would have prevented her from performing her job as a firefighter. However, the record is replete with evidence that would allow the jury to infer that Bender discharged plaintiff because he regarded them as such. ORS 659.425(1)(c). The court erred by granting defendant's motion for judgment *n.o.v.* on the perceived impairment claim.

Affirmed on appeal; on cross-appeal, judgment on perceived impairment claim reversed and remanded for entry of judgment for plaintiff; judgment on sex discrimination claim remanded for entry of judgment for damages not inconsistent with this opinion.