1 F.3d 1246
 4 NDLR P 339
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Don MCINTYRE, Plaintiff-Appellant,
v.
OLD TRAPPER SMOKED PRODUCTS, INC., an Oregon corporation;
Dennis Evenson, Defendants-Appellees.
 No. 92-35045.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 16, 1993.
Decided July 29, 1993.
As Amended Aug. 6, 1993.
 
 1
 Before: FARRIS and THOMPSON, Circuit Judges, and HARDY, District Judge.**
 
 
 2
 MEMORANDUM***
 
 OVERVIEW
 
 3
 Don McIntyre raised three contentions in the district court. First, he alleged age discrimination under both Oregon and federal law. Second, he alleged disability and perceived disability discrimination under Oregon law. Finally, he alleged wrongful discharge. The district court granted summary judgment against McIntyre on all of his claims. McIntyre appeals only the summary judgment on his perceived disability claim. We have jurisdiction under 28 U.S.C. Sec. 1291 and we reverse.
 
 FACTS
 
 4
 In August 1989, defendant Dennis Evenson interviewed McIntyre for a management position at Old Trapper Smoked Products ("Old Trapper"). On August 14, 1989, Evenson hired McIntyre as a marketing and sales manager. When Evenson hired McIntyre, he knew McIntyre had been "very very ill" several years earlier but made no further inquiry into McIntyre's health. Evenson referred to McIntyre on several occasions as an "old workhorse." Although it is uncontroverted that McIntyre worked long and hard, Evenson asserts that he was unhappy with McIntyre's ultimate job performance. McIntyre admits that Evenson expressed dissatisfaction with his sales goals and results dating as far back as October 1989.
 
 
 5
 McIntyre's job description and duties were changed several times during the eight months he was employed at Old Trapper. In February 1990, Old Trapper decided they needed someone with more marketing expertise than McIntyre. Bruce MacDonald was hired to replace McIntyre as marketing and sales manager. McIntyre's position in the company was changed to national sales manager and he was now to report to MacDonald. McIntyre's salary and compensation did not change. In early March, McIntyre initiated a drugstore sales program. His sales efforts resulted in only one verbal commitment from one drugstore. Evenson was concerned about the results of McIntyre's sales efforts in the drugstores and the lack of a written commitment. Due to this concern, the drug sales program was put on hold. The verbal commitment resulted in a final sale some time after McIntyre was terminated. Finally, in April, a proposal was discussed to make McIntyre more productive. Part of the proposal was that McIntyre might administer a new Chicago brokerage program.
 
 
 6
 Shortly after MacDonald was hired, McIntyre informed MacDonald that he had two heart attacks from cobalt treatment related to cancer treatment. On or about April 16, 1990, McIntyre informed Evenson and MacDonald that he would not be at work on April 23, 1990, because he was having surgery. After Evenson and MacDonald questioned him about the surgery, McIntyre gave a brief history of his medical background consisting of various ailments since 1980. On April 24, 1990, the day after his surgery, McIntyre returned to work. Upon his return, Evenson and MacDonald told McIntyre they wanted him to stay on with the company, but they had to find a way to make him more productive. They gave him a graph suggesting a salary phase-out and asked him to submit a proposal that would make him more productive. On April 25, 1990, McIntyre and MacDonald presented McIntyre's proposal for the suggested Chicago brokerage program to Evenson. Evenson concluded that the proposal was unacceptable because it was inconsistent with the earlier discussed salary phase-out and thus was far too expensive. On April 26, 1990, McIntyre was terminated.
 
 DISCUSSION
 
 7
 A district court's grant of summary judgment is reviewed de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987).
 
 
 8
 Federal Rule of Civil Procedure 56(c) authorizes summary judgment if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The moving party must show the absence of an issue of material fact. Id. at 325. The moving party may discharge this burden by showing there is an absence of evidence to support the nonmoving party's case. Id. Once an absence of evidence is shown, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. Id. The nonmoving party must do more than simply show a metaphysical doubt as to a material fact. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 578 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
 
 
 9
 The cause of action at issue here arises under Oregon Revised Statute Sec. 659.425 (1973) which provides:
 
 
 10
 It is an unlawful employment practice for an employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or terms, conditions or privileges of employment because:
 
 
 11
 (a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;
 
 
 12
 (b) An individual has a record of a physical or mental impairment; or
 
 
 13
 (c) An individual is regarded as having a mental or physical impairment.
 
 
 14
 Oregon Revised Statute Sec. 659.400(c) (1973) defines "regarded as having a physical impairment" to mean that the individual:
 
 
 15
 (A) Has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer or supervisor as having such a limitation.
 
 
 16
 (B) Has a physical or mental impairment that substantially limits a major life activity only as a result of the attitude of others toward such impairment; or
 
 
 17
 (C) Has no physical or mental impairment but is treated by an employer or supervisor as having an impairment.
 
 
 18
 McIntyre contends that Evenson violated Oregon Revised Statute Sec. 659.425(C) (1973). He asserts that Evenson perceived him as having an impairment and that he was terminated because of the perceived impairment.
 
 
 19
 The Oregon Court of Appeals has adopted the formulation of a plaintiff's prima facie case used in Title VII of the Civil Rights Act for all section 659 actions. Henderson v. Jantzen Inc., 719 P.2d 1322, rev. denied, 302 Or. 35 (1986). However, in City of Portland v. Bureau of Labor and Industries, 690 P.2d 475 (Or.1984), Oregon rejected the Title VII shifting of the burden formula set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Therefore, under Oregon discrimination law, to prevail on a motion for summary judgment a plaintiff must only prove a prima facie case of discrimination.
 
 
 20
 To establish a prima facie case of perceived discrimination under Oregon's anti-discrimination law, McIntyre must establish that (1) he was treated as having an impairment and he was discharged because of the perceived impairment, or (2) he was discharged under circumstances that give rise to an inference of discrimination. Henderson 719 P.2d at 1324. The Henderson court explained the role of the prima facie case under Oregon discrimination law as follows:
 
 
 21
 We understand McDonnell Douglas to have the objective of defining the plaintiff's initial prima facie burden as being so minimal that it is virtually impervious to a motion based on evidentiary insufficiency. We agree with the objective of enabling the plaintiff to reach the fact-finder without producing evidence concerning discrimination that the employer rather than the plaintiff is better able to produce.
 
 
 22
 1. Was McIntyre treated as having an impairment?
 
 
 23
 McIntyre must first set forth evidence that he was treated by his employer as having an impairment that substantially limits one or more life activities." OSCI v. Bureau of Labor and Industries, 780 P.2d 743, 746, rev. denied, 784 P.2d 1101 (Or.1989). To prevail on a summary judgment motion, McIntyre's evidence must be sufficient for a jury to return a verdict for him.
 
 
 24
 McIntyre alleges that after he announced that he had cancer, Evenson treated him as impaired. In determining whether sufficient evidence exists to survive a summary judgment, the court must view a discharge in its factual context. See Matsushita 475 U.S. at 587. Thus, we view McIntyre's discharge in the context of McIntyre's whole employment record. See McCarthy v. Cortland Cty. Community Action, 487 F.Supp. 333, 340 (N.D.N.Y.1980).
 
 
 25
 Several facts establish that McIntyre was not perceived or treated as having an impairment limiting a major life activity before he informed the company of the full extent of his illness. First, Evenson hired McIntyre knowing he had been "very very" ill at one time. The allegation that Evenson treated him as having an impairment is inconsistent with this fact. See de la Torres v. Bolger, 610 F.Supp. 593, 596-97 (N.D.Tex.1985), aff'd, 781 F.2d 1134 (5th Cir.1986) (an employer who hires an employee with knowledge of a particular condition does not perceive the employee as disabled because of that condition). Evenson did not have specific knowledge that McIntyre had "cancer" when he hired him. However, Evenson did know McIntyre had serious health problems in the past and he did not inquire further into the issue. If Evenson perceived McIntyre's health history as an impairment or potential limitation, he would have inquired further into the source of McIntyre's health problem prior to hiring him.
 
 
 26
 Second, Evenson openly referred to McIntyre as a "workhorse." The record establishes that Evenson referred to several employees as workhorses, and that the employees knew he was referring to their hard work on behalf of the company. With the exception of the timing of the discharge, this comment is the only evidence McIntyre cites to establish that he was perceived or treated as if he were impaired. He alleges that because Evenson called him an old workhorse, this proves Evenson treated him as impaired. The evidence points to the contrary. McIntyre himself admits that when Evenson called him an old workhorse, he was acknowledging McIntyre's hard work and long hours. Even after McIntyre revealed his cancer in February, McIntyre points to no other comments or actions by Evenson or MacDonald that suggest he perceived or treated McIntyre as impaired. Thus, the evidence shows that prior to April 16, 1990, Evenson perceived McIntyre as a hard worker with no limits on his ability to perform the work-related duties. See Diaz v. U.S. Postal Service, 658 F.Supp. 484, 492 (E.D.Cal.1987). In the context of McIntyre's whole employment record, Evenson's attitude toward McIntyre was inconsistent with the allegation that he perceived him as impaired.
 
 
 27
 McIntyre has not produced any direct evidence that prior to his termination Evenson perceived or treated him as having an impairment. However, a plaintiff may make out a prima facie case of discrimination with evidence that permits an inference of discrimination. Henderson 719 P.2d at 1324. McIntyre contends that he was discharged under circumstances giving rise to an inference of unlawful discrimination.
 
 
 28
 2. Was McIntyre terminated under circumstances giving rise to an inference of discrimination?
 
 
 29
 McIntyre alleges that two facts give rise to an inference of discrimination. First, McIntyre points to the fact that Evenson questioned his performance following the surgery. Second, McIntyre alleges the timing of his discharge was suspicious.
 
 
 30
 McIntyre asserts that Evenson's sudden concern for his productivity and request for a proposal was suspicious because his performance was never questioned in the past. This assertion contradicts McIntyre's own testimony. McIntyre himself admits that Evenson expressed dissatisfaction with McIntyre's performance as far back as October. McIntyre also admits he was replaced by someone with more marketing expertise and was essentially demoted. McIntyre's only evidence that his performance was satisfactory consists of his own conclusion that his performance was satisfactory. A nonmoving party in a motion for summary judgment may not rely on unsupported or conclusory allegations of his pleadings without any significant probative evidence tending to support the complaint. Anderson 477 U.S. 242 at 249. McIntyre has presented no evidence that his performance was actually satisfactory and thus an inference of discrimination should not be permitted.
 
 
 31
 McIntyre also argues that the timing of his discharge was suspicious and thus permits a reasonable inference of discrimination. In Title VII cases, a prima facie case of discrimination may be established by showing that an employee was terminated soon enough after the employer became aware of the employee's protected status, that a causal relationship could reasonably be inferred. Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir.1976); Grant v. Bethlehem Steel Corp., 622 F.2d 43, 46 (2nd Cir.1980); McCarthy v. Cortland Cty. Community Action, 487 F.Supp. 333, 340 (N.D.N.Y.1980).
 
 
 32
 McIntyre cites McCarthy 487 F.Supp. 333, and Goodwin v. City of Pittsburgh, 480 F.Supp. 627, to support the conclusion that his discharge was soon enough after discovery of his illness to reasonably infer a causal relationship. In McCarthy and Goodwin, both employees were discharged within two weeks of the time their employer learned of their protected activity.
 
 
 33
 MacDonald knew McIntyre had cancer in February, two months prior to discharging him in April. Two months is a significantly longer time span than two weeks and probably is not sufficiently close enough to the revelation of McIntyre's cancer to reasonably justify an inference that there was a causal relationship. Although MacDonald knew McIntyre had cancer in February, he was not fully aware at that time of the extent of McIntyre's health problems. MacDonald did not learn of McIntyre's extensive history of cancer until April 16, 1990, ten days prior to discharging him. On April 16, McIntyre told MacDonald that he had lung cancer in 1980, bone cancer in 1985, prostate cancer in 1988, a tumor on the back of his head, and currently had a lymph node that had to be removed. This revelation reveals significantly more about his health condition than his vague statement in February. MacDonald did not know the full extent of McIntyre's health condition until April 16, just ten days prior to discharging him.
 
 
 34
 Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. T.W. Elec. Serv. Inc., 809 F.2d at 630. Here, the doubt concerning when MacDonald obtained the relevant knowledge of McIntyre's health problem should be resolved in McIntyre's favor. The later date of April 16 is the date when MacDonald learned the full extent of McIntyre's health problems. Ten days is soon enough after MacDonald learned of these health problems to infer a causal relationship to the discharge. Before McIntyre revealed the full extent of his disability, MacDonald stated that the company wanted to retain him. MacDonald actively sought to make McIntyre more productive. The fact that Old Trapper gave up these efforts so soon after McIntyre disclosed his illness could support a finding that his perceived disability, not his low productivity, motivated his discharge. McIntyre, therefore, has presented evidence to support an inference that he was discharged under circumstances giving rise to discrimination based upon his perceived disability.
 
 
 35
 We conclude that the evidence presented by McIntyre was sufficient to establish a prima facie case under Oregon law on his perceived disability claim. Because McIntyre has shown that a genuine issue for trial exists, summary judgment is inappropriate.
 
 
 36
 REVERSED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Charles L. Hardy, Senior United States District Judge for the District of Arizona, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3