**Lori NEVEAU, Plaintiff,**

v.

**BOISE CASCADE CORPORATION, a Delaware corporation, Defendant.**

**Civ. No. 94–1522–FR.**

United States District Court,
D. Oregon.

Oct. 18, 1995.

Richard C. Busse and Scott N. Hunt, Law Offices of Richard C. Busse, Portland, Oregon, for Plaintiff.

Calvin L. Keith, Perkins Coie, Portland, Oregon, and John T. Sahlberg, Boise Cascade Corporation, Boise, Idaho, for Defendant.

## OPINION

FRYE, District Judge:

The matters before the court are 1) the motion of the defendant, Boise Cascade Corporation (Boise Cascade), for summary judgment (# 21); and 2) the amended motion of Boise Cascade for summary judgment (# 26).

**FACTS AS STATED BY LORI NEVEAU**

The plaintiff, Lori Neveau, was employed by Boise Cascade in 1989. She began her employment on the extra board; she was then moved to the yard crew, and finally to "stock prep," where she worked the Nos. 1, 2 and 4 slushers. As a pulp and paper worker, the terms and conditions of Neveau's employment were governed by a collective bargaining agreement.

In September of 1990, Neveau was lowered into one of the slushers, as was periodically required of her in order to clean and maintain the slusher. While she was in the slusher, Neveau suffered a panic attack. Co-workers helped her out of the slusher.

The nurse employed by Boise Cascade told Neveau that she was claustrophobic. Because Neveau was claustrophobic, management decided that other employees would clean and maintain the slushers.

On June 17, 1993, nearly three years after her panic attack, Neveau filled out a medical questionnaire indicating that she was claustrophobic. On October 6, 1993, her supervisor asked Neveau to clean one of the slushers. Neveau refused. A co-worker volunteered to clean the slusher, but the supervisor told Neveau that cleaning the slusher was part of her job, and that he would not permit someone else to do her job. Neveau was told that because she had refused to clean the slusher, she could leave for the day.

Neveau returned to work the next day with a handwritten letter from her physician who states that Neveau suffers from claustrophobia. Neveau met with the shop steward, a human resources representative, and her manager to discuss possible accommodations for her claustrophobia. Neveau wanted to continue to work on the slushers without being required to enter the slushers. Boise Cascade rejected this notion. Boise Cascade proposed adding more lighting in the slushers to minimize the claustrophobia from which Neveau suffered and also proposed that Neveau undergo a process of acclimation to the slushers with the assistance of another employee. Neveau refused these proposals. Neveau proposed that other workers clean the slushers whenever cleaning became necessary. Boise Cascade rejected Neveau's proposal and suspended Neveau without pay with the proviso that if she would enter the slushers to clean them, she could return to her position as a slusher operator. A slusher has to be cleaned three or four times a year.

Several days later, Boise Cascade hired an occupational medical specialist to assess reasonable accommodations for Neveau. The occupational medical specialist met with Neveau, asked her questions about her condition, and took a tour of the Boise Cascade plant. Three days later, Neveau was called to a meeting—this time with the director of the human resources department and two shop stewards. She was told that since there was not a job available at Boise Cascade that she could fully perform, she was terminated from her employment.

Boise Cascade contacted Neveau over a week later and told her to report to the yard crew. Part of her work on the yard crew was janitorial. She was paid $13.12 per hour; she had earned $15.00 per hour in her position as a slusher operator. After a few months on the yard crew, she was transferred to the shipping department, where she was paid $14.00 per hour. She was not required to go into "the pit" to clean under the Low–A–Rator as were the other members of the shipping department.

While she worked in the shipping department, her supervisor made frequent evaluations of her work and scrutinized her performance often. She was given poor evaluations and "yelled" at. No one else was treated in a similar fashion. She also had to clean up the "core" room, which is not a task normally assigned to persons working in the shipping department.

Neveau's supervisor in the shipping department was aware that she was claustrophobic and that Boise Cascade transferred her to the shipping department because of her condition. The human resources manager at Boise Cascade called her at home when she was off work because of a worker's compensation claim and complained about the injuries that had caused her to lose time at work.

## APPLICABLE LAW

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co*, 585 F.2d 946, 951 (9th Cir.1987), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.,* 638 F.2d 136, 140 (9th Cir.1981). Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.,* 575 F.2d 692, 699 (9th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

Boise Cascade has moved the court for summary judgment or, in the alternative, for partial summary judgment on each of the claims made by Neveau. In her first claim, Neveau alleges that she was discriminated against by Boise Cascade because she was disabled in part by claustrophobia. In her second claim, Neveau alleges that she was wrongfully discharged because she complained to her supervisors when a co-worker sexually harassed her.

## CONTENTIONS OF THE PARTIES

Boise Cascade contends that 1) Neveau is not "disabled" as defined by the law of the State of Oregon; and 2) if Neveau is disabled, Boise Cascade has reasonably accommodated that disability.

Neveau contends that the claustrophobia from which she suffers is a mental impairment which substantially limits a "[m]ajor life activity" as defined by O.R.S. 659.400(2)(a) and therefore is a disabling disease. Neveau also claims that Boise Cascade did not make reasonable accommodations for her condition so that she could remain in her position in "stock prep" and therefore maintain her seniority.

## APPLICABLE LAW

O.R.S. 659.425(1) provides that it is an unlawful employment practice to discriminate in employment on the grounds that:

(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

(b) An individual has a record of a physical or mental impairment; or

(c) An individual is regarded as having a physical or mental impairment.

Although O.R.S. 659.425(1) applies to those individuals with an "impairment," the Oregon courts have held that it is discrimination against a "disabled" person that is unlawful under the statute. *See Oregon State Correctional Inst. v. Bureau of Labor and Indus.,* 98 Or.App. 548, 780 P.2d 743, *rev. denied,* 308 Or. 660, 784 P.2d 1101 (1989).[1]

---

1. Federal cases have reached a similar conclusion under the regulations that were the model for the Oregon law. *See, e.g., Forrisi v. Bowen,* 794 F.2d 931, 934–35 (4th Cir.1986); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1099–102 (D.Haw.1980).

Under Chapter 659 of the Oregon Revised Statutes, a disabled person is defined as an individual who "has a physical or mental impairment which substantially limits one or more major life activities, has a record of such an impairment or is regarded as having such an impairment." O.R.S. 659.400(1).

An employee "is regarded as having an impairment" if that employee:

(A) Has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer or supervisor as having such a limitation;

(B) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of others toward such impairment; or

(C) Has no physical or mental impairment but is treated by an employer or supervisor as having an impairment.

O.R.S. 659.400(2)(c).

Major life activity "includes ... employment." O.R.S. 659.400(2)(a).

## RULING OF THE COURT

■ Neveau does not claim that the claustrophobia from which she suffers has affected anything other than her employment with Boise Cascade.

Oregon courts have consistently held that "'employment,' as used [to define a major life activity] in ORS 659.400(2)(a), does not mean employment in general." *Winnett v. City of Portland,* 118 Or.App. 437, 446, 847 P.2d 902 (1993); *see Quinn v. Southern Pac. Transp. Co.,* 76 Or.App. 617, 711 P.2d 139 (1985). In other words, "[a] person who 'is regarded as having a physical or mental impairment' that substantially limits employment is a person who is regarded as having an impairment that substantially limits 'the performance of the work involved.'" *Winnett,* 118 Or.App. at 447, 847 P.2d 902 (quoting O.R.S. 659.425(1)(a), (c)).

When Boise Cascade suspended Neveau without pay for two weeks, it did so because she would not clean the slusher on the occasion that she was asked to do so by her supervisor. A co-worker volunteered to enter the slusher for her, but the supervisor

deemed it Neveau's responsibility and a critical component of her job. Following Neveau's refusal to enter the slusher to clean it, Boise Cascade advised her that she could not continue working in that position.

Looking at the facts in a light most favorable to the nonmoving party, a finder of fact could conclude that Boise Cascade regarded Neveau's impairment as a substantial limitation on her ability to perform her job as a slusher operator, and that Boise Cascade did not provide the reasonable accommodation of allowing a second worker to enter the slusher on those rare occasions when it was necessary.

■ As to the second claim for wrongful discharge, Boise Cascade contends that Neveau was not terminated, and thus she cannot make a claim for wrongful discharge.

Neveau contends that between October 6, 1993 and October 22, 1993, she did not work because she was told there was no job at Boise Cascade that she could perform, and therefore she was discharged.

■ In order to prevail on her claim for wrongful discharge, Neveau must show that she was actually discharged. The elements of a claim for wrongful discharge are that the worker is discharged, and that the discharge was wrongful. *Moustachetti v. Oregon,* 319 Or. 319, 325, 877 P.2d 66 (1994).

On October 6, 1993, Neveau was sent home by her supervisor for refusing to enter the slusher. After a meeting a few days later with the director of the human resources department of Boise Cascade and two shop stewards, Neveau was told that there was no job she could perform at Boise Cascade, and that she was eligible for unemployment benefits. On October 22, 1993, she was called back to work by Boise Cascade and assigned to another position which did not require accommodation of her claustrophobia.

Neveau did not receive a written notice of termination from Boise Cascade; her union did not receive a written notice of termination as required by the collective bargaining agreement; nor did she receive a written notice of continuation of medical benefits, which is required to be sent by employers to

employees following termination of employment. Neveau never applied for or received unemployment benefits. Two weeks after she was "sent home," Boise Cascade placed her in another position. The court finds, as did the Civil Rights Division of the Bureau of Labor and Industries of the State of Oregon, that Neveau was never discharged by Boise Cascade, and therefore her claim for wrongful discharge must be dismissed.

## CONCLUSION

The motion of Boise Cascade for summary judgment (# 21) and the amended motion of Boise Cascade for summary judgment (# 26) are granted in part and denied in part as follows: the motions are denied as to Neveau's claim of disability discrimination and granted as to Neveau's claim for wrongful discharge.