DeVORE, J.
*376 *72 Plaintiff brought claims against the State of Oregon, its Oregon Racing Commission, and individuals, after termination of her employment.[1] She appeals from a judgment dismissing her claims. She assigns error to the trial court's decisions to grant defendant's motions for summary judgment which (1) dismissed her first claim for violation of her right to due process under the Fourteenth Amendment to the United States Constitution, and (2) dismissed her second and third claims under ORS 659A.030 for discrimination on the basis of sex or age.
As to the first claim, we conclude that the trial court erred in applying the doctrine of law of the case so as to preclude consideration of amendment of the claim to address one of defendant's challenges to the claim. For that reason, we reverse and remand for further consideration of plaintiff's motion to amend and the other motions related to that claim.[2] As to the latter claims, we conclude that the trial court did not err in granting dismissal because plaintiff's evidence does not permit a reasonable inference of discrimination.
I. FACTS
We review decisions on summary judgment to determine if the trial court correctly concluded that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. ORCP 47 C. We view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. Jones v. General Motors Corp. , 325 Or. 404, 408, 939 P.2d 608 (1997).
*73 The Oregon Racing Commission (ORC) is a state agency that oversees all sanctioned betting on horseracing in Oregon. The ORC employed plaintiff for about 24 years in positions of increasing responsibility, culminating in her position as the Manager of Advanced Deposit Wagering and of Mutuels. In her words, accounting comprised a "primary part of the job."
In June 2013, the ORC appointed McGrail as the new executive director. Shortly after he began supervising plaintiff, McGrail inquired about her professional background, asking her whether she had a license as a certified public accountant or a graduate degree in economics. Plaintiff had neither. McGrail seemed "very concerned" to learn that she had no college degree. McGrail asked how plaintiff was able to do the job, and he asked how she had lasted so long in the position. She replied that she "just came in and did [her] job," that she "read the rules and [she] read the statutes and [she] figured out what needed to be designed in terms of spreadsheets and what type of work needed to be done for those particular things." She "had basically evolved into [her] job." Plaintiff recalled that, at another time, McGrail told her, "I've been asking everyone about how good of a job you've been doing [pertaining to the Advanced Deposit Wagering] and they said you're doing a good job." (Brackets in original.)
Plaintiff felt that McGrail was "really, really difficult on [her] in terms of [her] education." Plaintiff formed the "strong impression" that McGrail was not asking her male coworkers to "qualify their education," and she knew that he was not inquiring into their job performance. Plaintiff interpreted McGrail's comments to be directed at her sex *377 and age, and she perceived that he held her to higher standards because of her sex.
Plaintiff believed that these fears were confirmed when McGrail placed her on administrative leave after an incident involving her son. Plaintiff's son had been a security guard at the Portland Meadows racetrack between September and November 2013. She and a witness-a security guard on the scene-offered somewhat different accounts of the incident.
*74 By plaintiff's account, on December 19, 2013, she and her son went to the office of the Portland Meadows security supervisor to pick up a paycheck. Plaintiff said that her son knocked on the door of the security supervisor's office, but he received no response. She knew that no one was inside the office. Plaintiff said she walked down the hallway seeking help. Her son, meanwhile, proceeded to unlock and open the door. When plaintiff returned, she said that she told him, "You cannot go in there. You do not work there any longer." He then closed the door, and they left.
Offering another account, the security guard said that he saw plaintiff standing, leaning against the wall in the hallway outside the door of the security office. According to the guard, when plaintiff noticed him approaching, she said something toward the office, and her son exited the office and returned the office key to its lock box. The guard had the impression that plaintiff aided her son in the unauthorized entry of the secured office by acting as lookout.
As a result of the security guard's allegation, McGrail put plaintiff on administrative leave. An attorney with the Oregon Department of Justice investigated the matter and reported the findings to the ORC. McGrail recommended plaintiff's dismissal, citing the incident. ORC notified plaintiff that it would consider her dismissal at a meeting on January 16, 2014. In an executive session chaired by ORC Commissioner Dudley, the commission voted unanimously to discharge plaintiff. Her employment ended January 23, 2014. At the time, plaintiff was 56 years old. She was replaced by a woman who was 50 years old.
II. PROCEEDINGS
In August 2014, plaintiff filed an appeal with the Employment Relations Board (ERB) alleging that ORC improperly regarded her as an at-will employee and that, as a consequence, ORC improperly discharged her. Eventually, the ERB would determine that the administrative appeal had been filed too late and dismiss the appeal.
In January 2015, before the administrative appeal was resolved, plaintiff filed this action in the circuit court.
*75 She alleged a "14th Amendment Due Process" claim against McGrail and the ORC, albeit without reference to violation of her civil rights under 42 USC section 1983. She also asserted a "Due Process" claim under the Oregon Constitution against McGrail and ORC, claims for sex and age discrimination under ORS 659A.030 against ORC, and a defamation claim against the ORC and a security supervisor. The complaint named ORC Chairman Dudley a defendant, but without regard to any particular claim.
Based on the federal claim, defendants removed the case to federal court. Among other things, the court dismissed the "14th Amendment Due Process" claim without prejudice.[3] The court did so as a matter of abstention in deference to an underlying matter of complex state law.[4] At the same *378 time, the federal court remanded to the state court the remaining discrimination claims made under state law.
After remand to state court, defendants McGrail and Dudley filed a motion to dismiss "the only remaining causes of action" against them and to remove their names from the case caption. They argued that a tort committed by a state employee within the scope of employment, involving damages within the statutory tort limits, should be brought against the state rather than the state's employee. See ORS 30.265(3) (providing for substitution of the state for employee *76 under such circumstances).[5] The motion did not refer to the former "14th Amendment Due Process" claim that the federal court had dismissed.
Plaintiff filed a motion "to amend her complaint [by] re-alleging the federal due process claim." She noted that the federal court had dismissed the claim without prejudice. The state opposed reinstating the due process claim, arguing that plaintiff's assumed property interest, needed for a due process claim, depended upon overturning her job classification before ERB, but ERB rejected her appeal as untimely, and she failed to seek judicial review of that decision.
The motions came for hearing before the trial court and were understood as defendants' motions to dismiss as to the "two state [tort] claims" and "plaintiff's request to add the claim that was dismissed without prejudice in federal court." Plaintiff confirmed the court's impression that she was "willing to dismiss voluntarily the claims against Mr. Dudley and Mr. McGrail." Plaintiff recounted that, after the administrative and federal proceedings, "the last remaining claims are a sex discrimination claim and age discrimination claim." Plaintiff urged a motion to amend to "bring the Fourteenth Amendment claim back" and also sought to add particulars in the discrimination claims. The court observed, "You want to amend those claims in an attempt to state a claim. Whether it's a successful attempt is not really before me, I don't think." Plaintiff agreed. The court decided to grant the motion to dismiss Dudley and McGrail, "as conceded by the plaintiff," and "to grant plaintiff's motion *** to add back, *** an attempt to plead the Fourteenth Amendment due process claim."
*77 At this juncture, we pause to observe that, at the hearing, plaintiff did not object that the individual defendants were necessary to state a civil rights claim under section 1983. Further, the record contains no testimony, declaration, or affidavit about the nature of plaintiff's concession in dismissing the claims against the individual defendants Dudley or McGrail.
On the day after the hearing, defendant emailed to plaintiff draft orders on the respective motions, seeking approval as to form. On the next day, plaintiff responded, "The orders look fine." Defendant forwarded the orders to the court, attesting that plaintiff had approved them.[6] The order allowing amendment provided, in part, that "Plaintiff is allowed leave to amend as to the First Claim For Relief (14th Amendment as to *379 Defendant Oregon Racing Commission only)[.]"
Plaintiff filed an amended complaint reinstating her "14th Amendment Due Process" claim, naming only the state and ORC as defendants. She still did not frame the claim with reference to a denial of civil rights under section 1983.[7] But, as before, she alleged insufficient notice, denial of a meaningful hearing, and a failure to balance her long employment with the alleged misconduct. She also added particular allegations in the discrimination claims.
Defendant filed an answer that included an affirmative defense asserting that a claim under section 1983 requires that the conduct of a "person" violated a federal constitutional right, that the state and ORC are not "persons" under federal law, and that the claim should be dismissed. The answer was served on plaintiff by mail.
On the following day, defendant emailed to plaintiff a draft copy of a limited judgment of dismissal as to Dudley and McGrail, seeking approval as to form. Plaintiff responded, "Approved, thanks." Defendant forwarded the *78 limited judgment to the court for filing, attesting that its form was approved by plaintiff. In material part, the limited judgment provided "that Plaintiff's claims against Defendants Chris Dudley and Jack McGrail are dismissed with prejudice[.]" A little over a month passed, without any activity in the file, before the court entered the limited judgment on January 19, 2017. Plaintiff raised no objection to form beforehand, and she filed no appeal thereafter.
With the record in that posture, the defendant filed motions for summary judgment against plaintiff's several claims. As to the first claim, defendant argued that there was no such thing as a direct claim based on the Due Process Clause of the Fourteenth Amendment to the United States Constitution and that plaintiff had failed to state the elements of a civil rights claim under section 1983. In particular, defendant argued, plaintiff had not sued "persons" for violating her constitutional rights, because neither the state nor its ORC are "persons" under federal law. Alternatively, defendant argued that plaintiff had held an at-will position, that she had failed to bring a timely challenge to her job's classification before ERB, that ERB had exclusive jurisdiction of classification matters, and that, as a consequence, she could not establish that she had a property right entitling her to due process.
In a separate motion, defendant argued that there was insufficient evidence to permit a reasonable juror to return a verdict for plaintiff on her claims of sex or age discrimination. Defendant argued that McGrail's comments, upon which plaintiff relied, were "facially neutral" and lacked any causal link to her termination. Defendant cited several statements as admissions from plaintiff's deposition that undermined her claims, including that she was not discharged because of her sex or age; that she was unaware of McGrail engaging in sex or age discrimination toward her, making comments or statements that she attributed to sex or age discrimination, or treating her differently from other employees; and that she did not accuse any ORC commissioners of sex or age discrimination, including in their decision to discharge her.
*79 Defendant argued that plaintiff acknowledged that her termination was precipitated by what had occurred at Portland Meadows-her son making an unauthorized entry into a racetrack office in her presence-and that McGrail cited these events as his reason for recommending her dismissal. Likewise, defendant noted that plaintiff attributed her termination to that incident whenever she discussed it with anyone. Finally, defendant argued that plaintiff was replaced by a woman of a comparable age at the time plaintiff was terminated.
On the first claim, plaintiff responded that, in her view, defendant had represented "in its motion" that "on all claims the State was liable for the acts of the remaining individual defendants[.]" Plaintiff argued that, as a consequence, the defendant should be estopped from arguing that the state is not a "person" as needed for such a claim under *380 section 1983. As to defendant's alternative argument, plaintiff disputed that her position was unclassified; instead, she asserted that she was in management service and that a court, not just ERB, could determine her appropriate job classification.
On the discrimination claims, plaintiff argued that a factfinder could infer that defendant treated her differently from male or younger employees in the way defendant conducted the investigation or carried out its discipline. To support that argument, she relied on statements from her deposition describing McGrail's prior inquiry about her education and job performance and his comment about her lasting so long in the position. Plaintiff had said that she perceived that her sex and age were "a factor" into the handling of the incident. Plaintiff offered a declaration asserting that "McGrail was much chummier with [her] male coworkers." She added that the security guard who reported the incident was a male employee.
At the hearing on the summary judgment motions, the trial court, with a different judge, asked plaintiff whether her removal of the individual defendants was voluntary. In answer, plaintiff replied that "the State's position, as indicated in its motions, was that * * * [the state] could substitute itself for the individual defendants because it was solely *80 liable[.]" The court asked whether, in the prior hearing, plaintiff had resisted by arguing that a federal claim under section 1983 requires individual defendants. The court asked, "Was any dispute like that laid before [the court]?" Plaintiff replied, "No. There was no-there was no dispute." Plaintiff argued that defendant knew the that individuals were coming out and that the Fourteenth Amendment claim was coming in.
After that colloquy, the trial court observed that, "as this case presents itself right now today, we're not in a position to re-fight the question whether or not the individuals should or should not be part of the litigation." That was so because, right or wrong, a limited judgment was entered, was not appealed, and was no longer at issue. The court indicated that, whether or not the parties actually agreed to remove the individuals, the most significant thing was that the court had entered a limited judgment dismissing them with prejudice.[8]
Plaintiff responded that she was not "attacking anything that [the prior judge] did" but was only seeking to estop defendant from taking inconsistent positions. Plaintiff argued that nothing prevented amendment to bring the individuals back into the case. The court answered that judgment dismissing the individuals precluded such amendment.
Plaintiff termed defendant's motions as "trickery." Defendant responded that plaintiff had voluntarily dismissed; that "[t]here was no 1983 claim even pending at [the] time" of the prior hearing, that defendant was responding only to the discrimination claims alleged under state law; and that, to the extent the plaintiff was alleging state tort claims, the state was the proper defendant on those claims.
At the end of the hearing, plaintiff "move[d] to amend *** orally to re-add the [individual] defendants to the lawsuit." Plaintiff also orally moved "to set aside the *81 stipulated limited judgment" that dismissed the individuals with prejudice, promising to file paper pleadings to that effect.[9]
The trial court issued a written opinion. On the first claim, the court observed that section 1983 governs "persons" who, under color of law, violate constitutional rights and that a state and its agencies are not "persons," citing Will v. Michigan Dept. of State Police , 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L.Ed. 2d 45 (1989). The court commented that plaintiff "presented no developed argument about the claim of estoppel in this case[.]" The court *381 determined that defendant asked the prior judge to apply the substitution statute, ORS 30.265(3), in a context in which it "clearly applied." Then, when defendant moved for summary judgment, it sought to apply the law governing a federal civil rights claim. The court determined that defendant "did not 'play fast and loose' with the court." The court observed that each party "was aware, or should have been aware, of the truth" as to the law, and that plaintiff could have taken responsive steps to preserve a federal claim against individual defendants. Indeed, the prior judge had confirmed in open court plaintiff's willingness to dismiss the individual defendants. Entry of the limited judgment, the court continued, established the law of the case and foreclosed the option to amend the complaint. Because plaintiff was "not surprised by entry of that limited judgment," the trial court decided it would "not disturb the prior limited judgment of dismissal." Absent "persons" needed for a civil rights claim, the court determined that the first claim failed as a matter of law. The court did not reach defendant's alternate argument that plaintiff's job classification meant that she had no property interest to have been protected by due process.
On the sex and age discrimination claims, the court recited that it construed the facts in plaintiff's favor, as required by ORCP 47 C, but determined that the record could not reasonably support a verdict in plaintiff's favor.
*82 The court determined that she failed to show any causal link between McGrail's comments or "chumminess" towards men and the incident investigation or McGrail's decision to recommend dismissal. In short, the court granted defendants' motions against plaintiff's three claims and denied plaintiff's cross-motion for summary judgment.
III. DUE PROCESS CLAIM
A. Arguments
On her first assignment of error, plaintiff repeats her arguments about her first claim, arguing that defendant should be equitably estopped from arguing that she sued the wrong defendant, contending that "the state represented that it was financially responsible for all of Plaintiff's claims[.]"[10] (Emphasis added.) In addition, plaintiff argues that the trial court abused its discretion by denying leave to amend to name individuals as defendants and that the trial court misapplied the doctrine of "law of the case" when giving preclusive effect to the limited judgment that dismissed the individuals.[11]
Defendant responds that its defenses were appropriate for each stage of the case at the time, that it made no false representation or broad agreement to substitute the state for claims past or future, and that the trial court did not err in acknowledging the effect of the limited judgment and declining to allow an amendment to make the dismissed individuals again defendants.
B. Equitable Estoppel
We conclude that, notwithstanding the allegation of sharp practice, the trial court did not err in rejecting plaintiff's arguments about equitable estoppel. Generally, equitable estoppel requires, among other things, a false *83 representation. Day v. Advanced M&D Sales, Inc. , 336 Or. 511, 518-19, 86 P.3d 678 (2004).[12] Here, there is none. *382 Our conclusion is founded on the state of the record at the time of critical events. To begin, plaintiff had not expressly alleged a claim under section 1983, and, if deemed implied, the original "14th Amendment Due Process" claim had named an individual as a defendant. That claim, however, had been dismissed-without prejudice-by the federal court. When the individual defendants sought dismissal of the claims against them, the due process claim was not at issue in the case. Thus, at that time, they appropriately relied on ORS 30.265(3) as a matter of state law to argue for their dismissal and the state's substitution as defendant on the remaining discrimination claims. By making that argument, defendants did not make a "false representation." Their argument was a truthful statement about the effect of the statute on tort claims founded in state law for damages within statutory damages limits. See generally Jensen v. Whitlow , 334 Or. 412, 416-17, 51 P.3d 599 (2002) (discussing substitution of state for individuals under the Oregon Tort Claims Act); see also Clarke v. OHSU , 343 Or. 581, 609-10, 175 P.3d 418 (2007) (invalidating substitution based on constitutional grounds where damages exceeded tort cap limits).
Although plaintiff has argued that defendants "agreed" or "stipulated" to substitute the state for all claims that plaintiff could bring, the record of this case, which constrains our review, contains no declaration or affidavit about any conversation, communication, or writing making such a broad representation. From her written response in the trial court, it appears that plaintiff may have made that assumption based upon the state's motion or arguments themselves. But, as noted, defendants' motion and arguments do not *84 represent that the state would be substituted for all claims that might be brought. And, there is no other evidence of a broader representation as to other claims generally or the due process claim in particular. Absent a false representation, equitable estoppel was not available to preclude the defendant's subsequent challenge to plaintiff's due process claim.[13]
C. Amendment Not Precluded
Because estoppel was unavailable, our question becomes whether the trial court erred in applying law of the case doctrine to preclude plaintiff from amending the complaint to name individuals as defendants. Plaintiff's oral motion to amend the due process claim to sue individual "persons" was a difficult proposal. As plaintiff points out, ORCP 23 provides, in part, that "leave shall be freely given when justice so requires." And, stating a claim under section 1983 does require suit against "persons," not the state or its ORC. See Will , 491 U.S. at 71, 109 S.Ct. 2304. But, with plaintiff's acquiescence, the trial court had entered a limited judgment that dismissed the individual defendants with prejudice. Because that judgment was not appealed, the trial court could regard that limited judgment to be just as final as an appellate decision. Understandably, the court might consider a particular matter that was resolved by that judgment to be "law of the case." However, as we explain, that limited judgment did not preclude consideration of plaintiff's motion to amend.
Generally speaking, "the law of the case doctrine 'precludes relitigation or reconsideration of a point of law decided at an earlier stage of the same case .' "
*85 OEA v. Oregon Taxpayers United , 253 Or. App. 288, 302, 291 P.3d 202 (2012) (quoting Bloomfield v. Weakland, 224 Or. App. 433, 440, 199 P.3d 318 (2008), rev. den., *383 346 Or. 115, 205 P.3d 887 (2009) (emphasis in OEA )). The Supreme Court has cautioned, "The term 'law of the case' is best reserved for use in the context in which a party seeks to relitigate an appellate decision." Kennedy v. Wheeler , 356 Or. 518, 531, 341 P.3d 728 (2014). That is because "[u]se of the term," to refer to every ruling the trial court has made "may confuse rather than clarify." Id . We have said the same, but we have added:
"Ordinarily, the doctrine gives 'preclusive effect to legal rulings made or sustained in prior appeals in the same litigation' but may also apply to trial court rulings within the same case when a court rules on a legal question and the question is raised in the same court."
Gozzi v. Western Culinary Institute, Ltd. , 276 Or. App. 1, 10, 366 P.3d 743, adh'd to as modified on recons, 277 Or. App. 384, 371 P.3d 1222 (2016) (quoting Poet v. Thompson, 208 Or. App. 442, 450, 144 P.3d 1067 (2006) ). As to prior trial court decisions, we have explained that
"a trial court's decision to give preclusive effect to its prior decision is a prudential decision that takes into consideration the policies underlying the doctrine, which are consistency of judicial decision, putting an end to litigation matters once determined, and preserving the court's prestige, and the rationale that a court should adhere to a previous ruling on an identical matter, whether rightly or wrongly decided, in order to advance the policies enumerated above."
Id. at 10-11, 366 P.3d 743 (quoting Poet, 208 Or. App. at 450-51, 144 P.3d 1067 (emphasis in Gozzi ; internal quotation marks omitted)); see also Poet, 208 Or. App. at 450, 144 P.3d 1067 (explaining that law of the case doctrine can apply to prior trial court rulings within the same case).
In this case, where the limited judgment had not been appealed, the trial court had an occasion to consider whether the limited judgment represented the law of the case on "a point of law decided at an earlier stage of the same case." See OEA , 253 Or. App. at 302, 291 P.3d 202 (emphasis omitted). Part of the trouble, however, lay in identifying what "point of law" was "decided" by the limited judgment. That judgment dismissed individual defendants Dudley and McGrail because *86 ORS 30.265(3) provided, under the circumstances, that the discrimination claims, asserted under state law, should be brought against the public body, not its employees. The limited judgment had not considered their potential role as defendants in the context of a federal civil rights claim under section 1983 because no such claim was in the case at the time. Consequently, the limited judgment did not represent a prior decision on that "point of law."
Part of the trouble also lay in the trial court's treatment of the limited judgment as a matter of claim preclusion. The court implicitly regarded the limited judgment of dismissal as not simply resolving the discrimination claims against the individual defendants, but also as precluding any additional claim not then in the case that might later be alleged against the individual defendants. Such a preclusive application of the limited judgment, while the case was still ongoing, was error.[14] See Office Services Corp. v. CAS Systems, Inc. , 63 Or. App. 842, 845, 666 P.2d 297, rev. den. , 295 Or. 773, 670 P.2d 1036 (1983) ("We agree with plaintiff that, generally, the bar of res judicata applies to subsequent lawsuits and not to separate claims within the same lawsuit.").
In Greene v. Homesales, Inc. , 257 Or. App. 817, 308 P.3d 279 (2013), rev. den. , 355 Or. 317, 327 P.3d 1167 (2014), we faced a similar misunderstanding of limited judgments. In *384 that case, a borrower pleaded claims for declaratory and injunctive relief against his lender, the lender's successor who had foreclosed, a successor trustee, and the property's purchaser after foreclosure. Id. at 819-20, 308 P.3d 279. After motions for summary judgment, the court entered limited judgments dismissing the borrower's claims against the defendants. Id. at 820-21, 308 P.3d 279. Nevertheless, the borrower filed an amended complaint *87 against the defendants, reasserting the old claims and adding a new claim for declaration as to the effect of a statute- ORS 86.770 -a statute that had no apparent role in the dispute. Id. at 821, 308 P.3d 279. After another round of summary judgment motions and additional judgments for the defendants, the borrower appealed. Id. at 822-23, 308 P.3d 279. The defendants argued, among other things, that claim preclusion, based on the prior limited judgments, prevented further claims under the third amended complaint. Id. at 824, 308 P.3d 279. We agreed that the limited judgments precluded relitigating with an amended complaint the same claims previously dismissed. Id . We explained, however, that "law of the case" prevented relitigating the same claims, not claim preclusion. Id . Further, we determined that, because claim preclusion did not apply, the prior limited judgments did not prevent pleading the new claim for a declaratory ruling on the effect of ORS 86.770. Id. at 824-25, 308 P.3d 279. Even so, we affirmed, because the new claim involving ORS 86.770 did not present a justiciable controversy for declaratory relief. Id. at 825-26, 308 P.3d 279.
Greene underscores the limits of law of the case. Law of the case may foreclose relitigating points of law decided at an earlier stage of the same case, but it does not necessarily foreclose amendment to allege a new claim against defendants who had secured a limited judgment in their favor. Id . Here, the limited judgment dismissing Dudley and McGrail prevented relitigating the discrimination claims against them, but it did not prevent the prospect of amendment to allege a section 1983 claim against them. Because the trial court gave the limited judgment the exaggerated effect of claim preclusion, the trial court erred. See id. ; Office Services Corp. , 63 Or. App. at 845, 666 P.2d 297 (rejecting claim preclusion); see also Godat v. Waldrop , 78 Or. App. 374, 380, 717 P.2d 180, rev. den. , 302 Or. 86, 726 P.2d 1185 (1986) ("[R ]es judicata applies only to the filing of multiple actions.").
We do not decide, however, that the trial court was compelled to grant plaintiff 's motion to amend. As always, the decision whether to grant leave to amend rests in the trial court's discretion. Ramsey v. Thompson, 162 Or. App. 139, 144, 986 P.2d 54 (1999), rev. den. , 329 Or. 589, 994 P.2d 130 (2000). In determining whether a court permissibly exercises its discretion, we consider, as may the trial court, "(1) the nature of *88 the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendment." Id. at 145, 986 P.2d 54.
In this case, the trial court cut short its consideration of those factors when giving too great an effect to the limited judgment. Accordingly, it remains for the trial court to evaluate those factors, including defendant's challenges to the merit of the proposed amendment. Those challenges include defendant's alternate arguments that plaintiff's job classification, reportedly in unclassified executive service, provides no property interest to be accorded due process protection and that only ERB had exclusive jurisdiction to have determined otherwise.[15] Such issues we leave for the trial court to determine in the first instance.
IV. DISCRIMINATION CLAIMS
A. Arguments
Plaintiff next assigns error to the trial court's decision to grant of summary *385 judgment against her claims for age and sex discrimination. On appeal, she argues that a jury could reasonably infer that the state treated her differently based on her age and sex "in the way it conducted its investigation into the Portland Meadows incident and carried out its discipline-terminating [her] employment." Given that focus on appeal, she argues that the handling of the Portland Meadows incident-i.e. , the investigation leading to employment termination-are the alleged discriminatory "terms" or "conditions" of plaintiff's employment.[16] *89 She argues, "Taken as a whole, the jury could infer" that "the ORC treated [her] differently in considering the allegations and ultimate discipline against her on the basis of her age and gender."
Defendant counters that plaintiff's claims depend on pure speculation; that plaintiff relies on comments that had nothing to do with her sex or age; and that those comments bore no relationship to the investigation. Defendant observes that plaintiff produced no concrete evidence that her treatment actually differed from that of male counterparts and that plaintiff did not deny or explain away her admissions in which she stated otherwise. Defendant concludes that plaintiff failed to provide evidence to create a question of fact to support her employment discrimination claim.
B. Approach
To resolve those arguments, we review the standards that govern. Oregon law prohibits employers from discriminating against employees in terms or conditions of work because of age, sex, or other protected characteristics. ORS 659A.030(1)(a), (b). To decide a motion for summary judgment in a disparate treatment claim, we view the evidence in the light most favorable to the nonmoving party and ask "whether the trier of fact reasonably could infer that the defendant discriminated against the plaintiff in the terms or conditions of work because of the plaintiff's *** protected characteristic." Durham v. City of Portland , 181 Or. App. 409, 421-22, 45 P.3d 998 (2002) (citing City of Portland v. Bureau of Labor and Ind. , 298 Or. 104, 114-15, 690 P.2d 475 (1984) ). "If that inference may reasonably be drawn, then the claim should be submitted to the trier of fact." Id. at 422, 45 P.3d 998. To be reasonable, the inference must follow, "as a matter of logical probability, from those facts that the summary judgment record establishes." Chapman v. Mayfield , 263 Or. App. 528, 535, 329 P.3d 12 (2014), aff'd , 358 Or. 196, 361 P.3d 566 (2015).
Evidence is insufficient to support a reasonable inference when "the conclusion to be drawn from it requires *90 too great an inferential leap-that is, when the logic is too strained" or "it requires the stacking of inferences to the point of speculation." State v. Bivins , 191 Or. App. 460, 467-68, 83 P.3d 379 (2004) (citations and internal quotation marks omitted). If, however, inferences are reasonable, then the plaintiff may successfully establish a prima facie case of discrimination, precluding summary judgment. See Medina v. State of Oregon , 278 Or. App. 579, 587, 377 P.3d 626 (2016) ("[W]e conclude that [plaintiff] established a prima facie case of racial discrimination, and thus summary judgment should not have been granted for defendants.").
We have recognized that, to establish a prima facie case of disparate treatment, "proof of discriminatory motive is rarely direct and often, necessarily, circumstantial and inferential." Id. at 588, 377 P.3d 626 (citation and brackets omitted). Given that reality, a plaintiff can use indirect evidence to raise the inference of intentional discrimination. Henderson v. Jantzen , Inc. , 79 Or. App. 654, 657, 719 P.2d 1322, rev. den. , 302 Or. 35, 726 P.2d 934 (1986). Although *386 indirect evidence can take a variety of forms, one approach involves showing that "(1) plaintiff is a member of a protected class, (2) plaintiff was qualified for the job and was performing it according to the employer's legitimate expectations, (3) plaintiff suffered an adverse employment action, and (4) other 'similarly situated' nonminority employees were treated more favorably." Garcez v. Freightliner Corp. , 188 Or. App. 397, 406, 72 P.3d 78 (2003) (citing McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973) ).[17]
Courts generally agree that, at minimum, for nonminority comparators to be considered "similarly situated," they must resemble the plaintiff in the respects that are material to the factual circumstances of the case. Nicholson v. Hyannis Air Serv., Inc. , 580 F.3d 1116, 1125 (9th Cir. 2009) ; Lewis v. City of Union City, Georgia , 918 F.3d 1213, 1218 (11th Cir. 2019) ;
*91 Shumway v. United Parcel Serv., Inc. , 118 F.3d 60, 64 (2d Cir. 1997) ; Dear v. Shinseki , 578 F.3d 605, 610 (7th Cir. 2009) ; Neuren v. Adduci, Mastriani, Meeks & Schill , 43 F.3d 1507, 1514 (D.C. Cir. 1995) ; Wallace v. Methodist Hosp. Sys. , 271 F.3d 212, 221 (5th Cir. 2001), cert. den. , 535 U.S. 1078, 122 S.Ct. 1961, 152 L.Ed.2d 1022 (2002) ; Ercegovich v. Goodyear Tire & Rubber Co. , 154 F.3d 344, 352 (6th Cir. 1998), reh'g den (1998); Wilcher v. Postmaster Gen. , 441 F. Appx 879, 882 (3d Cir. 2011), cert. den. , 565 U.S. 1239, 132 S.Ct. 1645, 182 L.Ed.2d 241 (2012) ; see also Winnett v. City of Portland , 118 Or. App. 437, 442, 847 P.2d 902 (1993) (noting that former ORS 659.030, renumbered as ORS 659A.030 (2001), is modeled after Title VII of the federal Civil Rights Act and that we may look to federal cases interpreting Title VII for their instructive value (citing Seitz v. Albina Human Resources Center , 100 Or. App. 665, 672-73, 788 P.2d 1004 (1990) )); Henderson , 79 Or. App. at 657, 719 P.2d 1322 (adopting the United States Supreme Court's articulation of what constitutes a prima facie case of discrimination under Title VII for the purposes of applying Oregon's employment antidiscrimination laws from Texas Dept. of Community Affairs v. Burdine , 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.Ed. 2d 207 (1981) ). Relevant similarities vary depending on the context, but can include education, experience, job description, tenure, conduct, or other characteristics that the employer would consider in making the particular personnel decision in question.
Once a plaintiff demonstrates that the comparators were similarly situated, she must establish that she received disparate treatment with respect to the challenged employment action, or in a respect related to that action. See, e.g., Medina , 278 Or. App. at 586-88, 377 P.3d 626 (Hispanic employee was passed over for promotions in favor of less qualified non-Hispanic white applicants, and he was disciplined on seven occasions for conduct that resulted in no discipline for non-Hispanic employees); La Manna v. City of Cornelius , 276 Or. App. 149, 165-66, 366 P.3d 773 (2016) (employer refused to hire homosexual applicant for reasons that it did not apply to heterosexual applicants that it hired); Gibson v. Douglas County , 197 Or. App. 204, 218-20, 106 P.3d 151 (2005) (female employee's discipline was carried out differently from that of male employee who engaged in similar conduct);
*92 Ettner v. City of Medford , 178 Or. App. 303, 306-07, 35 P.3d 1140 (2001) (city terminated female firefighter after forcing her to undergo different procedures and tests from her male counterparts); Winnett , 118 Or. App. at 439-42, 847 P.2d 902 (female firefighter trainee received ill-fitting gear and no training and was then discharged after performing poorly and having minor injuries, but male firefighters had proper gear, training, and faced no discipline after sustaining more disruptive injuries); Frazier v. Minnesota Mining and Manu. Co. , 82 Or. App. 328, 331-32, 728 P.2d 87 (1986), rev. den. , 303 Or. 74, 734 P.2d 354 (1987) (two men who participated in conduct for which female employee was discharged *387 faced no discipline whatsoever, and neither did other male employees who engaged in similar or more serious offenses); Henderson , 79 Or. App. at 657, 719 P.2d 1322 (qualified male applied for one of several available positions, but employer hired and employed only women).
As an alternative to showing favorable treatment toward similarly situated nonminorities, a plaintiff can meet the fourth criterion by demonstrating that her employer hired someone belonging to the nonminority group-or, for the purposes of alleged age discrimination, hired someone whose age differed substantially-in her place. O'Connor v. Consolidated Coin Caterers Corp. , 517 U.S. 308, 313, 116 S. Ct. 1307, 134 L.Ed. 2d 433 (1996) (discussing the requirements to raise an inference of unlawful discrimination in age discrimination cases under the Age Discrimination in Employment Act of 1967, assuming that the Title VII McDonnell Douglas framework applies); see also La Manna , 276 Or. App. at 164, 366 P.3d 773 (concluding that the plaintiff's claim, which established a prima facie case of age discrimination for the purposes of the Age Discrimination in Employment Act, allowed an inference of discrimination under ORS 659A.030 ). Evidence of such a replacement supports an inference of discriminatory intent only if some evidence indicates defendant perceived or knew about the age discrepancy. See, e.g. , Woodman v. WWOR-TV, Inc. , 411 F.3d 69, 81-82 (2d Cir. 2005) (so holding); La Manna , 276 Or. App. at 165, 366 P.3d 773 (citing Woodman , 411 F.3d at 81-82, and requiring proof of knowledge or belief as to the protected status in the context of discrimination based on sexual orientation).
*93 In this case, we conclude that plaintiff failed to adduce evidence to support a reasonable inference of unlawful discrimination. To explain, we address each claim separately.
C. Sex Discrimination
Plaintiff's claim of sex discrimination rests on her contention that she was treated less favorably than similarly situated men, but the record is devoid of such evidence. Primarily, plaintiff contends that McGrail, shortly after becoming executive director, asked about her background in accounting and economics, that he asked others about her job performance, and that she formed the "strong impression" that he did not do so for male employees. Plaintiff argues that a factfinder could infer from that evidence that "ORC would have treated a similarly situated male *** differently in the way it conducted its investigation" and "carried out its discipline[.]" We disagree that this record supports reasonable inferences required to reach that conclusion. When examined closely, any inference that McGrail or the state treated plaintiff differently than male employees would be impermissibly speculative.
Plaintiff does not assert that the state actually investigated or disciplined anyone differently, but merely that it hypothetically would or could have . Further, she does not assert that the incident with her son-regardless how it is assessed-did not occur. And, she does not assert that male employees were involved in comparable incidents that did not prompt investigations. Instead, plaintiff admitted having no evidence that the state handled any other investigations in a manner dissimilar to her own, nor evidence of cases implicating men engaged in comparable situations.
To the extent that plaintiff suggests that men were treated more favorably, she fails to show that these men were similarly situated to herself. She asserts that McGrail did not subject other employees, who were "primarily" men, to the same level of scrutiny with respect to his questions and comments pertaining to education and job performance. However, plaintiff offers no support for her "impression" that *94 the comparator employees were "similarly situated" in any material sense, such as their job descriptions or qualifications. It is undisputed that plaintiff's position-managing mutuels and account wagering hubs-involved proficiency in accounting and that plaintiff had no formal expertise or advanced degree. McGrail had only recently been appointed executive director, and, as plaintiff's supervisor, had reason to inquire; and his questions were limited to skills relevant to performance of plaintiff's work. A juror could not reasonably infer, without *388 more, that the McGrail asked these questions because of plaintiff's sex.
Even if McGrail's questions suggested some degree of preferential treatment, plaintiff failed to establish any connection between those questions and the investigation that she now challenges. McGrail's questions and comment occurred shortly after he came to ORC. The investigation, however, occurred months later. An employee other than McGrail-the security guard-made the report of the incident, and a third party-an attorney with the Department of Justice-conducted the investigation. Regardless whether McGrail's prior inquiries about plaintiff's background might suggest that he held plaintiff to a higher standard, a failure to meet a higher standard was not then or later the subject of the investigation or grounds for dismissal. Plaintiff does not allege that she was disciplined, in a discriminatory way, for deficient qualifications or job performance. Contra Winnett , 118 Or. App. at 439-42, 847 P.2d 902 (female firefighter trainee received ill-fitting gear and no training and was then discharged after performing poorly and having minor injuries, but male firefighters had proper gear and training); Ettner , 178 Or. App. at 306-07, 35 P.3d 1140 (city terminated female firefighter after forcing her to undergo different procedures and tests from her male counterparts). Plaintiff has not offered evidence to show that the investigation was a sham motivated by a discriminatory evaluation of her qualifications or performance. Rather, plaintiff has consistently attributed her discipline to the Portland Meadows incident. Whatever the evaluation of the incident, the concern for misconduct was given as the basis for McGrail placing plaintiff on administrative leave and for recommending her dismissal. Absent speculation, no relationship exists between McGrail's early *95 conversations with plaintiff and the later investigation of the incident.
When McGrail's remarks with plaintiff fail to suffice, we are left with plaintiff's statement that "McGrail was much chummier with [her] male co-workers." For a pair of reasons, McGrail's disparate demeanor likewise fails to permit a reasonable inference of a discriminatory investigation or discharge.
First, plaintiff's impression contradicts previously existing evidence from her deposition in which she stated that, to the best of her knowledge, McGrail did not treat her differently from other workers. The claim that McGrail was friendlier in his treatment toward men was clearly inconsistent with the prior statement that he treated them no differently. Plaintiff did not provide a justification or explanation for the discrepancy. Accordingly, this statement cannot defeat the summary judgment motion. See Henderson-Rubio v. May Dept. Stores , 53 Or. App. 575, 583-85, 632 P.2d 1289 (1981) (holding that a party may not create a genuine issue of fact by submitting an affidavit directly contradicting its prior deposition testimony without any explanation for the contradiction).
Second, a juror would be required to speculate as to how McGrail's demeanor affected the investigation at issue.[18] Absent evidence of differential treatment-such as evidence of more lenient investigations of incidents involving men or perhaps evidence of discriminatory remarks made in the investigation of plaintiff's incident-no reasonable factfinder could infer that McGrail's chummy nature resulted in disparate treatment of plaintiff in the report by the security officer, the investigation by the Department of Justice attorney, or McGrail's dismissal recommendation to the ORC's *96 governing body. Without more, McGrail's "chumminess" with men is too speculative to support a reasonable inference of discrimination in the investigation or discharge. *389 With nothing more to show, plaintiff's claim that she was treated less favorably than men is a claim that requires inferential leaps, none of which logically flow from the record. Those long leaps are that plaintiff's male colleagues were comparably short in terms of formal qualifications; that men performed more poorly than plaintiff's recognized success; that men had been involved in similar incidents without investigation or discipline; that McGrail's early comments were imparted months later to the independent investigation into plaintiff's alleged misconduct; and that McGrail's greater comfort with men colored his recommendation and influenced the vote of the ORC commissioners. Plaintiff provides nothing to support such inferences. Nor does she address the fact that her replacement was a woman. Plaintiff cites no case, and we are aware of none, in which facially neutral, work-related comments supported a reasonable inference of unlawful discrimination without any other circumstantial evidence of differential treatment whatsoever. For those reasons, we find no error in the trial court's decision to grant of summary judgment on the claim of sex discrimination.
D. Age Discrimination
For similar reasons, we reach the same conclusion about plaintiff's claim of age discrimination. That is, the evidence does not support a reasonable inference of disparate treatment. Plaintiff cites a single remark to make her case-McGrail's question about how she lasted so long in her position. When McGrail asked the question, plaintiff explained how she had come to learn and perform the work and how she created spreadsheets that comply with relevant statutes and rules. That exchange happened in the context of McGrail's question about her education and expertise. In that context, to remark that a person has lasted a long time in a particular job refers to a span of time, but the remark does not express disdain for a person's relative age in comparison with others. Indeed, in her deposition testimony, when plaintiff's counsel specifically asked whether she perceived *97 McGrail treated her differently from "younger employees," she did not appear to agree. When properly understood, McGrail's question can only be reasonably interpreted to convey-at most-skepticism about plaintiff's competency to do the job without greater education and surprise that she had succeeded. A reasonable factfinder could not ignore the context of the remark and infer a discriminatory regard for plaintiff's age.
The only age evidence in the record was presented by defendant. Defendant pointed out that plaintiff's replacement was born in 1963; and defendant argued that the two women were "roughly the same age." Plaintiff's replacement was age 50 at the time of plaintiff's termination, while plaintiff was age 56.[19] Plaintiff's complaint alleged that she was replaced by a "much younger employee," but, on appeal, she does not assert that the age difference is substantial.
With no additional evidence, an age difference of six years as between two employees, both of whom are in their fifties, is not in itself sufficient to permit a reasonable inference that defendant discriminated against plaintiff on the basis of her age. Accord Grosjean v. First Energy Corp. , 349 F.3d 332, 336-40 (6th Cir. 2003), cert. den. , 541 U.S. 1010, 124 S.Ct. 2069, 158 L.Ed.2d 620 (2004) (reviewing federal case law and noting that, in the "overwhelming body of cases in most circuits," age differences of less than 10 years are not sufficiently substantial to establish the fourth part of the age discrimination prima facie case without other evidence that the employer considered the age significant, and then setting a more "lenient" standard of six years).
The record contains no indication that McGrail contemplated-or was even aware of-the ages of plaintiff or her replacement, much less that he regarded the difference to be significant. Moreover, nothing connects *390 plaintiff's age to the disciplinary proceedings that are at issue. The inference that plaintiff's age influenced the investigation would *98 require a factfinder to make a speculative assumption that does not reasonably flow from the facts in this record. Therefore, the court did not err when granting summary judgment on plaintiff's claim of age discrimination.
V. CONCLUSION
On plaintiff's first claim, we conclude that the trial court erred in determining that the limited judgment precluded any consideration of amendment to allege a section 1983 claim against individual defendants. As to that claim, we reverse and remand for the trial court to complete consideration of plaintiff's motion to amend and the related issues of the parties' motions for summary judgment. On plaintiff's second and third claims, we conclude that the court did not err in dismissing the claims of sex and age discrimination. As to the latter claims, we affirm.
Reversed and remanded as to the first claim for relief; otherwise affirmed.

We refer to the state and the Oregon Racing Commission in the singular as "defendant" or "the state."

Plaintiff also assigns error to the trial court's decision to deny her cross-motion for summary judgment to determine her correct job classification-one that does not mean employment at will-and, as a consequence, to conclude that she was entitled to due process. We do not reach plaintiff's final assignment of error due to the trial court's need to finish consideration of plaintiff's motion to amend the first claim and, in the course of that consideration, address in the first instance the unresolved issues presented by defendant's motion and plaintiff's cross-motion for summary judgment on the first claim.

The federal court accepted the parties' agreement to dismiss the defamation and Oregon "Due Process" claim with prejudice.

The court abstained based on the Burford abstention doctrine whereby a federal district court may exercise discretion to decline to rule on a state issue arising out of a complicated state regulatory scheme. See Burford v. Sun Oil Co. , 319 U.S. 315, 318, 63 S. Ct. 1098, 87 L.Ed. 1424 (1943) (declining to exercise jurisdiction in a complex regulatory system for oil and gas). Here, the complicated regulatory scheme was classification of state employees, and the issue was whether plaintiff's position was erroneously designated as a position in unclassified executive service-a matter subject to review by ERB. See ORS 240.195 (providing categories for state employees); OAR 115-010-0000 (providing the purpose of the rules governing ERB). That issue is central because an employee in "unclassified service" would be an at-will employee who lacked a property interest in his or her continued employment. See, e.g. , Papadopoulos v. Bd. of Higher Ed. , 14 Or. App. 130, 157, 511 P.2d 854 (1973), cert. den. , 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974) ("In general, *** tenured public employees can only be discharged 'for cause' established in a hearing, while probationary public employees can be discharged for any reason or no reason and have no right to a hearing on the ground therefor."). The federal court did not decide the state's argument that ERB, subject to review by the Court of Appeals, had exclusive jurisdiction of classification disputes.

ORS 30.265(3) provides:
"If an action under ORS 30.260 to 30.300 alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the public body. If an action is filed against an officer, employee or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the court upon motion shall substitute the public body as the defendant. Substitution of the public body as the defendant does not exempt the public body from making any report required under ORS 742.400."

As it would happen, the court did not ever sign that order of dismissal of the individuals (i.e. , it signed a limited judgment later), but the court did sign the order to amend.

She did not cite section 1983 nor use language referring to the action of a person who, acting under color of state law, violated her federal constitutional right.

The court explained:
"All I'm saying is that if there has been some error in requiring you to remove the individuals, that error occurred or did not at the time that [the prior judge] made his ruling and only the Court of Appeals has the authority to overturn that ruling, not me."

Although plaintiff did not file written motions, plaintiff had included, in her memorandum opposing summary judgment, the brief statement that the court should permit her to amend to allege the claim against the dismissed individuals or the court should "correct" the limited judgment to indicate the dismissal applied only to the discrimination claims.

Plaintiff also contends that the matter of a proper defendant under section 1983 is one of "personal jurisdiction" and, as such, can be waived. Defendant rejoins that the issue of personal jurisdiction was not raised below or preserved for appeal. We agree. To the extent plaintiff refers to waiver in her estoppel argument, we address that briefly later. 298 Or. App. at 84 n. 13, 445 P.3d at 382 n. 13.

Plaintiff has not assigned error to the trial court's failure to set aside the limited judgment dismissing individual defendants.

The Supreme Court has summarized the requirements:
" 'To constitute estoppel by conduct there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it[.]' "
Day , 336 Or. at 518-19 (quoting Coos County v. State of Oregon , 303 Or. 173, 180-81, 734 P.2d 1348 (1987) (brackets in Day )).

Nor is waiver. Plaintiff used the word waiver in making the estoppel argument below and on appeal. As often described,
"Waiver is the intentional relinquishment of a known right. Waiver must be plainly and unequivocally manifested, either in terms or by such conduct as clearly indicates an intention to renounce a known privilege or power. (To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose[.] )"
Guardian Management LLC v. Zamiello , 194 Or. App. 524, 529, 95 P.3d 1139 (2004) (quoting Wright Schuchart Harbor v. Johnson , 133 Or. App. 680, 685-86, 893 P.2d 560 (1995) (brackets in original)). Nothing in the individuals' defense under ORS 30.265(3) -to substitute the state in the pending discrimination claims-clearly indicated an intention to renounce the state's right to insist on the "person" element in a proposed claim under section 1983.

The trial court's preclusive view of a limited judgment might be explained by a focus on the language of dismissal "with prejudice." In the more appropriate context, involving successive cases , we have explained:
"The term 'with prejudice,' expressed in a judgment of dismissal, has a well-recognized legal import; and it indicates an adjudication of the merits, operating as res judicata, concluding the rights of the parties, terminating the right of action, and precluding subsequent litigation of the same cause of action, to the same extent as if the action had been prosecuted to a final adjudication adverse to the plaintiff."
Sandgathe v. Jagger , 165 Or. App. 375, 381, 996 P.2d 1001 (2000) (quoting Judgments , 46 Am. Jur. § 609 at 883 (1995)).

Compare Ahern v. OPEU , 329 Or. 428, 434-35, 988 P.2d 364 (1999) (given a complex regulatory scheme, ERB has "exclusive jurisdiction to determine whether an unfair labor practice has been committed") with Black v. Coos County , 288 Or. App. 25, 35-36, 405 P.3d 178 (2017) (negligent misrepresentation and unjust enrichment claims brought by county employees did not raise a question to be decided by ERB, and, thus, their claims remained within circuit court's jurisdiction).

Although plaintiff's complaint was drafted broadly and the parties' litigation at the summary judgment stage was not limited to those allegedly discriminatory "terms" and "conditions," plaintiff has narrowed her arguments on appeal. We limit our analysis to those theories plaintiff presents on appeal, because it is "not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself." Beall Transport Equipment Co. v. Southern Pacific , 186 Or. App. 696, 700 n. 2, 64 P.3d 1193, adh'd to on recons, 187 Or. App. 472, 68 P.3d 259 (2003).

As we noted in Garcez , "The United States Supreme Court has emphasized that the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." 188 Or. App. at 406 n. 6, 72 P.3d 78 (internal quotation marks omitted) (citing Swierkiewicz v. Sorema N. A. , 534 U.S. 506, 512, 122 S. Ct. 992, 152 L.Ed. 2d 1 (2002) ; Durham , 181 Or. App. at 423, 45 P.3d 998 ).

Although plaintiff alleges McGrail treated men in a friendly way while treating plaintiff distantly, plaintiff characterizes her claim as discrimination in the investigation and discharge, not as a discrimination claim for hostile work environment. See Garcez , 188 Or. App. at 408, 72 P.3d 78 (observing under the analogous federal statute, 42 U.S.C. section 2000e-2(a), "[f]or a hostile work environment claim to be actionable, the offensive environment must be 'sufficiently severe or pervasive' so as to alter the conditions of the victim's employment and create an abusive working environment"); OAR 839-005-0030 (adopting a similar standard for the purposes of ORS 659A.030 ).

The record does not indicate when the replacement was hired, but, if hired within two months of plaintiff's discharge, the replacement would have been age 50. Plaintiff's age at the time of discharge, 56, is a deduction from her age given later at the time of her deposition and from a birthdate notation in the DOJ investigation. Comparing birthdays, plaintiff was about five years, seven months older than her replacement.